**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Pamela M. Overton, SBN 009062; overtonp@gtlaw.com
Kristine K. Campbell, SBN 021876; campbellk@gtlaw.com

Peter A. Antonucci (admitted *pro hac vice*); antonuccip@gtlaw.com
Greenberg Traurig, LLP
200 Park Avenue
New York, New York  10166

Luanne Sacks  (admitted pro hac vice); luanne.sacks@dlapiper.com
DLA Piper LLP
555 Mission Street, Suite 2400
San Francisco, California  94105-2933

*Attorneys for Defendant LifeLock, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE LIFELOCK, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 08-1977-MHM-PHX |
| | **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF CLASS NOTICE, AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS** |
| | **(ORAL ARGUMENT REQUESTED)** |
| | **(Assigned to the Honorable Mary Murguia)** |

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1  Defendants LifeLock, Inc. and Richard Todd Davis and plaintiffs Melvyn Blake,

2  Alva Blake, Franco Vega, Byrl Lane, and Jason Sbalcio do hereby jointly move for an

3  order:

4      1.     Granting preliminary approval of the settlement reached by the parties;

5      2.     Certifying, for settlement purposes only, the settlement class specified in the

6  parties' settlement agreement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2);

7      3.     Approving the parties' proposed form and method of notice of settlement to

8  class members;

9      4.     Establishing a schedule for dissemination of the notice of settlement to class

10  members as well as the deadlines for class members to submit claims in connection with,

11  object to, or request exclusion from the settlement.

12      5.     Approving and appointing Robert B. Carey and Leonard W. Aragon, of

13  Hagens Berman Sobol Shapiro LLP, as Class Counsel; and approving and appointing

14  plaintiffs Melvyn Blake, Alva Blake, Franco Vega, Byrl Lane, and Jason Sbalcio as

15  Settlement Class Representatives.

16      6.     Approving and appointing Rust Consulting, Inc. as the Settlement

17  Administrator.

18      7.     Setting a hearing for final approval of the settlement and regarding

19  Plaintiffs' counsel's application for an award of fees and costs.

20      8.     Approving preliminary approval order substantially in the form of the

21  document attached as Exhibit 3 to the Declaration of Luanne Sacks, submitted herewith.

22      This motion is brought pursuant to Fed. R. Civ. P. 23(e) and is based on this

23  Motion, the attached Declarations of Robert B. Carey, David Paris, Luanne Sacks, Pamela

24  Overton, and Andrew Berg, the complete file and record in this action, the argument of

25  counsel, and such other and further evidence and argument as the Court may choose to

26  entertain.

## I.    INTRODUCTION

In March 2008, Plaintiff Byrl Lane filed a nationwide class action against LifeLock, Inc. on behalf of himself and over one million current and former subscribers to LifeLock's identity theft protection services.  Thirteen similar federal and state court class actions followed raising a plethora of challenges to LifeLock's business system and marketing practices.  However, at the heart of all of these lawsuits was the allegation that LifeLock and its Chief Executive Officer, Todd Davis,[1] (collectively "LifeLock") had misrepresented the scope and nature of services provided.

Similarly, the Federal Trade Commission ("FTC") commenced a formal investigation regarding LifeLock's advertising that was later joined by 35 State Attorneys General ("AG").  In the course of their parallel but independent investigations, the FTC and the AGs examined every aspect of LifeLock's business – its advertising and marketing, customer service, security procedures, services offered, service guarantee, revenues and corporate organization.[2]

Now, following years of intense regulatory scrutiny and ongoing litigation efforts in 14 class actions, all concerns regarding LifeLock's advertising and services have been resolved—to the satisfaction of the FTC, the AGs, and the plaintiffs in the MDL action ("Plaintiffs").  In an omnibus settlement with the FTC and AG that was approved by Judge Wake on March 15, 2010, LifeLock has agreed to pay $12 million, of which $11 million will be made available to its subscribers through a claims process the FTC will implement, administer and oversee.  The FTC settlement, which was reached during extensive settlement discussions with the Plaintiffs, also provides for injunctive relief, but LifeLock has promised an even broader injunction under the terms of the currently proposed settlement with Plaintiffs.  As Plaintiffs acknowledge, these settlements are in

---

[1] Class Plaintiffs in the MDL action did not include Todd Davis as a Defendant.
[2] (Declaration of P. Overton ISO Preliminary Approval ("Overton Decl.), ¶¶ 21-25.)

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   the best interests of LifeLock's subscribers – they will receive significant benefits and

2   avoid the risks, uncertainty and delay inherent in continued litigation.[3]

3          Accordingly, LifeLock and Plaintiffs hereby jointly move this Court, under Federal

4   Rule of Civil Procedure 23(b)(2) to issue an order:  (1) granting preliminary approval of

5   the proposed settlement, (2) conditionally certifying a settlement class, (3) approving the

6   proposed notice plan, (4) appointing Hagens Berman as Class Counsel, (5) appointing

7   Melvyn Blake, Alva Blake, Franco Vega, Byrl Lane and Jason Sbalcio as Settlement

8   Class Representatives, (6) appointing Rust Consulting, Inc. as Settlement Administrator,

9   and (7) setting the date for a final fairness hearing.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   LifeLock's Services and Marketing

12         LifeLock is an identity-theft protection business based in Tempe, Arizona.  It

13  provides a suite of services designed to help prevent or limit identity theft.[4]  Monthly

14  subscriptions fees range between $5.00 and $15.00 depending on the scope of services

15  selected.[5]  Where there is a failure or defect in LifeLock's promised services, LifeLock

16  activates its $1 Million Service Guarantee ("Service Guarantee") to assist its subscribers.[6]

17         LifeLock's method of providing identity theft protection has changed over time.

18  From 2005 through September 8, 2009, LifeLock's services included sending requests to

19  credit bureaus to place "fraud alerts" on its subscribers' credit reports.[7]  After September

20  8, 2009, LifeLock moved from the fraud alert model to new, more robust, technology

21  based on computer algorithms intended to proactively identify identity theft potentials.[8]

23  [3] (Declaration of R. Carey ISO Preliminary Approval ("Carey Decl."), ¶¶ 4, 6 & 7.)
24  [4] (Overton Decl., ¶ 3.)
25  [5] (Overton Decl., ¶ 3.)
    [6] (Overton Decl., ¶ 4.)
    [7] (Overton Decl., ¶ 5.)
26  [8] (Overton Decl., ¶ 5.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Since it commenced business in 2005, LifeLock has employed a constellation of advertisements, testimonials and promotions on television, over the radio, in magazines, in newspapers, on the Internet and in other publications.[9]

LifeLock has also promoted its services through three partner programs: 1) The Certified Referring Partner Program, 2) The Referring Partner Program, and 3) The Partner Program. Collectively, there are approximately 2,000 third-party companies, or individuals, in these programs such as Office Depot, US Airways, American Advantages, Delta Airlines, Cabella's and Choice Hotels International. One of the benefits of the partner programs is that the employees have the option to enroll in LifeLock at a discount or at the employer's expense, in some cases.[10] Finally, LifeLock markets its services through its on-line partners who use methods such as Internet banners to advertise LifeLock's services on thousands of different websites.[11]

LifeLock's Terms and Conditions of membership ("T&Cs") were displayed on its website throughout the class period.[12] Subscribers who enroll on-line are directed to those T&Cs and must affirmatively acknowledge they have read and accepted them in order to complete the enrollment process.[13] Other subscribers are directed to the T&Cs via mail and e-mail correspondence.[14] In addition, all of LifeLock's current advertising prominently informs viewers they should visit LifeLock's website and read the T&Cs.[15]

**B.    Relevant Litigation**

The cases currently consolidated within this MDL proceedings (the "Underlying Actions") include: (1) *Bryl Lane v. LifeLock, Inc.*, No. 2:08-CV-00594-PHX-MHM (D.

---

[9] (Overton Decl., ¶ 6.)
[10] (Overton Decl., ¶ 7.)
[11] (Overton Decl., ¶ 7.)
[12] (Overton Decl., ¶ 8.)
[13] (Overton Decl., ¶ 8.)
[14] (Overton Decl., ¶ 8.)
[15] (Overton Decl., ¶ 8.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Ariz. filed March 27, 2008); (2) *Warren Pasternack and Susan Pasternack v. LifeLock, Inc. and Richard Todd Davis*, No. 3:08-CV-02098-FLW (D.N.J. filed March 28, 2008); (3) *Vilma Martinez-Azoy v. LifeLock, Inc. and Richard Todd Davis*, No. 2:08-CV-21989-KMM (S.D. Fla. filed May 23, 2008); (4) *Robert Dillon v. LifeLock, Inc. and Richard Todd Davis*, No. 2:08-CV-04515-SVW (C.D. Cal. filed May 27, 2008); (5) *James Kondrat and Susan Kondrat v. LifeLock, Inc.*, No. 1:08-CV-03244-JWD (N.D. Ill. filed June 5, 2008); (6) *Jason Sbalcio v. LifeLock, Inc.*, No. 1:08-CV-02799 (D.N.J. filed June 5, 2008); (7) *Tommy Ly v. LifeLock, Inc. and Richard Todd Davis*, No. 2:08-CV-00242-TJW (E.D. Tex. filed June 16, 2008); (8) *Mario Aliano v. LifeLock, Inc.*, No. 1:08-CV04401 (N.D. Ill. filed August 4, 2008); (9) *Robert Berland v. LifeLock, Inc.*, No. 2:08-CV-01493 (D. Ariz. filed August 13, 2008); (10) *Franco Vega v. LifeLock, Inc.*, No. 2:08-1032-CJC-MLG (C.D. Cal. filed September 16, 2008); (11) *Brian Lackey v. LifeLock, Inc.*, No. 1:08-CV-02172 (D. Colo. filed October 7, 2008); and (12) *Melvyn Blake v. LifeLock, Inc.*, No. 2:08-CV-2162 (D. Ariz. filed December 3, 2008).[16]

Two of the fourteen cases originally transferred to this Court—*Gerhold v. LifeLock, Inc.*, Circuit Court of Jackson County, West Virginia, Civil Action No. 08-C-69 and *Falke v. LifeLock, Inc.*, Circuit Court for Washington County in Maryland, Civil Action No. 21-C-08-30505CN—were remanded back to their originating state courts by order dated July 24, 2009.[17] Subsequently, Plaintiffs in the *Gerhold* case sought to substitute a new class representative by filing a second complaint captioned *Rapp v. LifeLock, Inc.*, Circuit Court of Jackson County, West Virginia, Civil Action No. 08-C-69.[18] The *Gerhold, Rapp* and *Falke* matters are referred to collectively as "the Related State Court Actions."

---

[16] (Overton Decl., ¶ 9.)

[17] (Docket #100.)

[18] (Overton Decl., ¶ 10.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   The Underlying Actions and Related State Court Actions were filed as putative

2   class actions seeking certification under Rule 23(b)(2) and/or (b)(3) or under state-court

3   analogues.  The majority of the Underlying Actions sought certification of a nationwide

4   class.[19]  It is on that basis – and the fact that those cases remain part of the MDL – that

5   this Court may approve a settlement that covers all states, including Maryland and West

6   Virginia.  That is, whereas the *Falke* and *Gerhold* cases have been specifically excluded

7   from the MDL, the LifeLock subscribers who reside in those states, Maryland and West

8   Virginia, remain members of the national class for settlement purposes.  Indeed, counsel

9   in the Related State Court Actions has expressly agreed to the proposed settlement terms

10  and supports certification of a nationwide settlement class.[20]  Moreover, a nationwide

11  settlement is appropriate so long as the settlement class reflects this point, and it does.

12  ### C.   Plaintiffs' Claims and Allegations

13  The complaints in the Underlying Actions and the Related State Court Actions, as

14  well as the more recently filed MDL Master Complaint, challenge LifeLock's services,

15  practices and representations in a variety of contexts.  For example, Plaintiffs complain

16  that LifeLock misrepresented the nature and effectiveness of its identity-theft protection

17  services, particularly the scope of its Service Guarantee.  They allege violations of the

18  Arizona Consumer Fraud Act and similar federal and state statutes governing consumer-

19  protection, unfair and deceptive practices and false advertising.  They allege that LifeLock

20  breached its subscription agreements because it could not lawfully perform one of the

21  promised services – requesting the placement of fraud alerts by credit bureaus – and that it

22  charged for services it did not provide.  They also assert LifeLock's $1 million Service

23  Guarantee is really insurance, or a misrepresentation of coverage, that LifeLock sold in

24  violation of relevant state insurance laws and regulations.  Some plaintiffs also claim that

25  _____

26  [19] (Overton Decl., ¶ 12.)
    [20] (Declaration of D. Paris ISO Preliminary Approval ("Paris Decl."), ¶¶ 2-6.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1    LifeLock failed to utilize promised security measures to protect its subscribers'

2    confidential information.

3          In addition, Plaintiffs in the Related State Court Actions make claims under the

4    West Virginia Consumer Credit and Protection Act based on the theory that LifeLock was

5    performing credit repair and credit monitoring services.

6          Based on their varied claims, Plaintiffs in all actions ask for injunctive relief,

7    declaratory relief, restitution, rescission, disgorgement and/or damages.[21]

8          **D.    Current Status of the MDL Proceedings**

9          Pursuant to this Court's order, on July 31, 2009, Hagens Berman, in its Court-

10   appointed role as Interim Lead Counsel, filed a Master Complaint in these MDL

11   proceedings.  On November 6, 2009, LifeLock filed a Motion for Judgment on the

12   Pleadings under Fed. R. Civ. P. 12(c) on grounds that, *inter alia*, the Master Complaint

13   lacks the requisite pleading specificity and many of the putative class members lack

14   standing.  That motion has been fully briefed and is currently pending before the Court.[22]

15         On December 11, 2009, the MDL plaintiffs filed a motion requesting application of

16   Arizona law to the consolidated claims.  In response, LifeLock argued that the MDL

17   plaintiffs failed to satisfy their burden to show that Arizona law can properly be applied to

18   the claims of a consumer class comprised of residents of forty-eight (48) states.  That

19   motion has also been fully briefed and is currently pending before the Court.[23]

20         This Court ordered that discovery be completed by August 31, 2010, and any

21   motion for certification be made no later than September 30, 2010.  Since then, the parties

22   have initiated discovery and LifeLock has completed the depositions of the five Plaintiffs

23   /////

24

25   [21] (Overton Decl., ¶ 14.)

26   [22] (Overton Decl., ¶ 15.)
     [23] (Overton Decl., ¶ 16.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   named in the Master Complaint—Mr. Lane, Mr. Vega, Mr. Sbalcio, and Mr. and Mrs.

2   Blake (collectively "MDL Plaintiffs").[24]

3         **E.   Current Status of the Related State Court Actions**

4        In the related Maryland state-court action, *Falke v. LifeLock*, the Washington

5   County Circuit Court heard LifeLock's motion to dismiss on January 7, 2010. The court

6   granted the motion in part and denied it in part, and set a hearing on class certification for

7   April 4, 2010. LifeLock thereafter deposed the two named plaintiffs, Mr. and Mrs. Falke.

8   The parties have agreed to seek a stay of the *Falke* action pending settlement approval by

9   this Court.[25]

10        In the related West Virginia state-court action, *Gerhold v. LifeLock,* the plaintiff

11   recently filed an amended complaint seeking to substitute Mr. Rapp as the class

12   representative and change the caption to read *Rapp v. LifeLock*.[26] The parties are in the

13   course of seeking a stipulated stay to facilitate the proposed nationwide class settlement.[27]

14         **F.   Initial Settlement Discussions**

15        Plaintiffs and LifeLock have engaged in a series of confidential settlement

16   communications telephonically, in person, and in writing over the last year.[28] LifeLock

17   provided informal discovery to facilitate those discussion, including information regarding

18   its membership base, income and revenue. At the same time, LifeLock was engaged in

19   negotiations with the FTC and the AGs, as explained more fully below.[29] In October

20   2009, with the hope of achieving a global resolution of the regulatory proceedings and the

21   /////

22

---

23   [24] (Overton Decl., ¶ 17.)

24   [25] (Overton Decl., ¶ 18.)
        [26] (Overton Decl., ¶ 19.)

25   [27] (Overton Decl., ¶ 20.)
        [28] (Declaration of L. Sacks ISO Preliminary Approval (Sacks Decl.), ¶¶ 6-13.)

26   [29] (Declaration of A. Berg ISO Preliminary Approval ("Berg Decl."), ¶¶ 5-16.)

1   federal and state class actions, LifeLock engaged separate counsel specifically for the

2   purpose of facilitating settlement negotiations.[30]

3       Plaintiffs made a written settlement demand to LifeLock on November 25, 2009.

4   LifeLock rejected that demand and tendered a separate settlement offer on December 4,

5   2009.  On December 15, 2009, Plaintiffs rejected LifeLock's settlement offer and made a

6   counteroffer.  As negotiations continued, Defendants proceeded to take the depositions

7   described above.[31]

8       **G.    The FTC Settlement**

9       The FTC began its investigation of LifeLock in early 2007.  From that time to the

10  present, LifeLock's senior management and its outside counsel engaged in extensive

11  meetings, telephone conversations, and written communications with FTC staff to explore

12  settlement on terms mutually acceptable to LifeLock and to FTC staff that would permit

13  the latter to make a settlement recommendation to the FTC Commissioners for their

14  consideration and approval.[32]

15      In the course of these settlement discussions, LifeLock presented to FTC Staff

16  extensive documents, data, empirical analysis, and legal arguments relevant to the

17  settlement issues under consideration.  Notably, this information contained copies of

18  literally every print and television advertisement run by LifeLock since its inception along

19  with detailed sworn financial disclosures, including LifeLock's federal and state tax

20  returns, corresponding audited and unaudited financial statements, and myriad other

21  data.[33]

22      These discussions culminated in a settlement agreement, in the form of the

23  Stipulated Final Judgment and Injunction, that was signed by LifeLock and Richard Todd

24  _____

25  [30] (Sacks Decl., ¶ 6.)
    [31] (Overton Decl., ¶ 29.)

26  [32] (Berg Decl., ¶¶ 5-16.)
    [33] (Berg Decl., ¶¶ 5-16.)

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Davis on February 23, 2010, which was subsequently approved by a 4-0 vote of the FTC Commissioners on March 6, 2010, filed for consideration and approval in the District Court of Arizona on March 11, 2010 and approved by Judge Wake on March 15, 2010.[34] The FTC settlement provides for extensive injunctive provisions applying to LifeLock's advertisement of its identity theft protection services and security of subscriber personally identifiable information as well as the payment of approximately $11 million to the FTC for consumer redress to LifeLock subscribers and $1 million for reimbursement of the investigatory expenses of the AGs in their companion settlements. The FTC settlement also includes extensive recordkeeping and auditing provisions to ensure LifeLock's compliance with its terms.[35]

### H.   Further Class-Action Settlement Discussions

On February 25, 2010, counsel for Plaintiffs and LifeLock met to discuss the implications of the proposed FTC settlement and to explore a contemporaneous compromise resolution of the class action litigation. In that meeting, Plaintiffs' counsel acknowledged the significant benefits to be afforded to class members under the proposed FTC settlement, in the form of both injunctive and monetary relief. Likewise, Defense counsel acknowledged Plaintiffs' role in facilitating LifeLock's decision to enter into settlement with the FTC. And as a further condition of settlement of the class action litigation, LifeLock agreed to provide additional injunctive relief specifically directed to two provisions of the T&Cs that Plaintiffs had challenged and that were not the subject of the FTC or AG investigations or negotiations: (1) the mandatory arbitration provision regarding all disputes with subscribers; and (2) the prohibition against prosecution of any class action claims against it.[36]

---

[34] (Berg Decl., ¶ 15.)

[35] (Berg Decl., ¶ 15.)

[36] (Sacks Decl., ¶¶ 11-12; Carey Decl., ¶¶ 8-16.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LifeLock and Plaintiffs acknowledged that it would be to the benefit of all parties to secure a single, nationwide settlement if possible.  Accordingly, Interim Class Counsel for the MDL Plaintiffs obtained agreement from counsel in the Related State Court Actions that he and his clients support a comprehensive nationwide class settlement in this MDL proceeding that would include the residents of Maryland and West Virginia.[37]

Fees, costs and incentive awards were discussed only after the parties had reached tentative agreement regarding substantive settlement terms, and only after LifeLock had committed itself to the terms of the FTC settlement, including the payment of $11 million to be used for consumer redress.[38]

## III.   THE TERMS OF THE PROPOSED SETTLEMENT

The complete terms of the settlement are set forth in the Settlement Agreement, which is submitted currently with this motion.[39]  A summary of the key terms follows.

### A.   The Settlement Class

The parties have agreed to certification under Federal Rule of Civil Procedure 23(b)(2) of a nationwide settlement class.  This settlement class consists of:

> All persons in the United States who are current or past subscribers of LIFELOCK'S identity theft protection services. Excluded from the Class are employees, officers and directors of LIFELOCK; any judge or employee of any court assigned to work on the MDL PROCEEDINGS, the RELATED STATE COURT ACTIONS and the UNDERLYING ACTIONS; and PLAINTIFFS' and LIFELOCK's attorneys and staff.[40]

### B.   The Injunctive Relief

The settlement will provide multi-faceted injunctive relief that will benefit all class members.  Specifically, the Settlement Agreement provides:

---

[37] (Paris Decl., ¶¶ 2-6.)
[38] (Sacks Decl., ¶ 13; Carey Decl., ¶ 17.)
[39] (Sacks Decl., ¶ 3, Ex. 2 (Settlement Agreement).)
[40] (Settlement Agreement ("Agmt."), ¶ O.)

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LIFELOCK shall stipulate and agree to the entry of a permanent injunction to be included in the final judgment of the COURT providing that:

A.    in connection with the advertising, distributing, promoting, offering for sale, or sale of any product, service, or program designed for the purpose of preventing, mitigating, or recovering from any form of identity theft as defined in 18 U.S.C. § 1028, LIFELOCK shall not misrepresent:

(i)    that such product, service, or program provides complete protection against all forms of identity theft by making customers' personal information useless to identity thieves;

(ii)    that such product, service, or program prevents unauthorized changes to customers' address information;

(iii)    that such product, service, or program constantly monitors activity on each of its customers' consumer reports;

(iv)    that such product, service, or program ensures that a customer will always receive a phone call from a potential creditor before a new credit account is opened in the customer's name;

(v)    the means, methods, procedures, effects, effectiveness, coverage, or scope of such product, service, or program;

(vi)    the risk of identity theft to consumers;

(vii)    whether a particular consumer has become or is likely to become a victim of identity theft; and/or

(viii)    the opinions, beliefs, findings, or experiences of an individual or group of consumers related in any way to any such product, service, or program.

Such products, services or programs include, but are not limited to, the placement of fraud alerts on behalf of consumers, searching the Internet for consumers' personal data, monitoring commercial transaction for consumers' personal data, identity theft protection for minors, and guarantees of any such products, services or programs.

B.    misrepresent in any manner, expressly or by implication, the manner or extent to which LIFELOCK maintains and protects the privacy, confidentiality, or security of any personal information collected from or about consumers.

C.    in addition, LIFELOCK shall not:

(i)    include in future versions of the Terms and Conditions of LIFELOCK membership any provision requiring members to submit any disputes with LIFELOCK to arbitration;

/////

(ii)    seek to enforce any arbitration clause set forth in any current or prior version of the Terms and Conditions of LIFELOCK membership described on LIFELOCK's website;

(iii)    include in future versions of the Terms and Conditions of LIFELOCK membership any provision prohibiting members from participating in class action litigation against LIFELOCK; or

(iv)    seek to enforce any prohibition against class action litigation set forth in any current or prior version of the Terms and Conditions of LIFELOCK membership.[41]

**C.      Release of Claims Conditioned on FTC Settlement.**

This settlement is inextricably intertwined with the FTC and AG settlements, through which class members will be able to apply for, and receive, restitution from a fund of $11 million. None of this fund will escheat to LifeLock under any circumstances: these monies have been provided to the FTC, which has sole and exclusive discretion in their administration. This term of the FTC settlement was critical to Plaintiffs in their decision to proceed with settlement of the class action litigation. Indeed, the proposed class action settlement is expressly conditioned on court approval of the FTC settlement; if monetary redress is not provided to LifeLock's subscribers, Plaintiffs may terminate the proposed settlement of the class actions.[42]

**D.      Incentive Awards and Attorneys' Fees**

Plaintiffs may petition the Court for a maximum aggregate award of $1.9 million for their attorneys' fees, costs, expenses, and incentive awards.[43]

**E.      Notice and Right to Opt Out**

Direct notice to all past and present LifeLock subscribers will be accomplished by electronic mail to all subscribers for whom LifeLock has current and valid e-mail information and by first-class mail to all others. All settlement class members will also

---

[41] (Agmt., ¶ 25.)

[42] (Agmt., ¶ 22.)

[43] (Agmt., ¶ 21.)

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

receive publication notice through a comprehensive, dedicated website.[44]  Class members will be afforded eight weeks in which to request exclusion or file objections.[45]  Rust Consulting, Inc. ("Rust") will administer class notice, with LifeLock bearing all associated costs.[46]

## IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action shall not be dismissed or compromised without the approval of the court after "a hearing and on finding that the [the compromise] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). However, on preliminary approval, the court does not make a full and final determination regarding fairness.  "Because class members will subsequently receive notice and have an opportunity to be heard," the court "need not review the settlement in detail at this juncture." *In re M.L. Stern Overtime Litigation*, 2009 WL 995864 *3 (S.D. Cal. 2009). "[I]nstead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *Id.*, citing Newberg on Class Actions, § 11.25 (4th ed. 2002); *see also* Manual for Complex Litigation Fourth § 21.632 (2009). Accordingly, the issue presently before this Court is "whether the settlement is within the range of possible approval, such that there 'is [a] reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.*, quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980) and citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (noting and implicitly approving the district court's preliminary approval process).

The Ninth Circuit has articulated six factors relevant to evaluation of the fairness of a class action settlement at the preliminary approval stage: (1) the strength of plaintiffs'

---

[44] (Agmt., ¶¶ 12-13 & Attachments A-C.)
[45] (Agmt., ¶¶ 12, 16.)
[46] (Agmt., ¶¶ 17.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

1   case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk

2   of maintaining class action status throughout the trial; (4) the consideration offered in

3   settlement; (5) the extent of discovery completed, and the stage of the proceedings; and

4   (6) the experience and views of counsel.  *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir.

5   2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

6   　　　In applying these factors, this Court should be guided foremost by the general

7   principle that settlements of class actions are favored.  By their very nature, because of the

8   uncertainties of outcome, difficulties of proof, and lengthy duration, class action suits

9   readily lend themselves to compromise.  *Pfizer, Inc. v. Lord*, 456 F.2d 532, 543 (8th Cir.

10  1972); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[p]articularly in class

11  action suits, there is an overriding public interest in favor of settlement").  Moreover, the

12  Court should give a presumption of fairness to arms-length settlements reached by

13  experienced counsel.  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir.

14  2009) ("We put a good deal of stock in the product of an arms-length, non-collusive,

15  negotiated resolution.")

16  　　　Here, all relevant factors favor a preliminary finding of fairness, reasonableness,

17  and adequacy.

18  **A.　　The Strengths of Plaintiffs' Case and Risks Inherent in Continued
　　　　　Litigation and in Securing Certification Favor Preliminary Approval.**

19  　　　Every class action—indeed, every case—involves some level of uncertainty on the

20  merits.  Settlements resolve that inherent uncertainty, and are therefore strongly favored

21  by the courts, particularly in class actions.  *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d

22  943, 950 (9th Cir. 1976); *Cotton*, 559 F.2d at 1331 (5th Cir. 1977).  These MDL

23  proceedings are not unique in this regard—the parties disagree about the merits, and there

24  is substantial uncertainty about the ultimate outcome of these complex multi-jurisdiction

25  proceedings.

26  /////

1   This settlement is unique in several ways.  First, LifeLock has ceased the primary

2   conduct complained of in the Master Amended Complaint (i.e. the placement of fraud

3   alerts and statements about the Service Guarantee) and has agreed to an injunction

4   regarding other disputed matters.   Similarly, the parallel FTC and AG actions have been

5   settled and will afford $11 million in redress to LifeLock's subscribers.  In short, Plaintiffs

6   have received exactly what they prayed for:  LifeLock no longer engages in the conduct

7   complained of and Plaintiffs will receive monetary compensation under the FTC

8   settlement.  This clearly supports approval of the proposed class action settlement.

9        The fact that monetary compensation will be paid under the FTC settlement further

10  supports settlement.  Indeed, from LifeLock's perspective, the FTC settlement would

11  make it more difficult for Plaintiffs to satisfy the superiority prong of the Rule 23(b)(3)

12  class certification analysis should litigation continue.

13       Uncertainty on the merits also supports settlement.  Plaintiffs argue that LifeLock

14  was expressly prohibited from requesting fraud alerts on behalf of others because the

15  language of the Fair Credit Reporting Act was intended to apply to individuals and not

16  businesses; LifeLock argues the opposite position.  LifeLock has filed a motion for

17  judgment on the pleadings which has been fully briefed and was pending before the Court

18  at the time of settlement.[47]  Although the parties disagree on the merits of that motion,

19  they do agree that a ruling in either party's favor would have a significant impact on

20  Plaintiffs' claims going forward.[48]

21       Just as important, LifeLock elicited deposition testimony from the proposed class

22  representatives that it believes would warrant summary judgment and denial of class

23  certification.  Specifically, from LifeLock's perspective, Plaintiffs' testimony

24  demonstrates:  (1) they each saw and/or heard different LifeLock advertisements before

25  _____

26  [47] (Docket # 115.)
    [48] (Overton Decl., ¶ 15; Carey Decl., ¶ 6.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

1  enrolling; (2) some admitted they were not misled by LifeLock; (3) those who claimed

2  reliance did so based on differing verbal or written representations by LifeLock; (4) some

3  admitted they were satisfied with LifeLock's services; (5) those who voiced

4  dissatisfaction did so for differing reasons; (6) some admitted they were not damaged; and

5  (7) those who claimed damages did so based on differing theories.[49]  Plaintiffs strongly

6  disagree regarding the substance, import and effect of their testimony, and particularly

7  whether it would preclude certification or support summary judgment.  However, both

8  parties acknowledge this testimony is relevant to the risks and uncertainty of their ability

9  to prevail on the merits both from a legal and factual perspective.[50]

10       Given these considerations, preliminary approval is appropriate to avoid the

11  uncertainties of continued litigation and given the extraordinary relief afforded the

12  settlement class.

   **B.    The Complexity, Expense, and Duration of the Litigation Favor**
13  **        Preliminary Approval**

14       In addition to the substantial risks and uncertainty inherent in continued litigation,

15  the parties face the *certainty* that further litigation would be expensive, complex, and time

16  consuming.  This Court and multiple state courts would be required to resolve difficult

17  and complicated issues of statutory interpretation and class certification.  Indeed, these

18  cases raise numerous issues of law and fact regarding liability and certification that would

19  likely be the subject of appeal regardless of their outcome.

20       As other courts have acknowledged, "unless the settlement is clearly inadequate, its

21  acceptance and approval are preferable to lengthy and expensive litigation with uncertain

22  results."  *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

23  2004), quoting Conte and Newberg, Newberg on Class Actions (4th ed. 2004) § 11:50 at

24  155.  Settlement is encouraged in class actions where possible: "It hardly seems necessary

25  _____

26  [49] (Overton Decl., ¶ 31.)
    [50] (Sacks Decl., ¶ 4; Carey Decl., ¶ 6.)

AW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1    to point out that there is an overriding public interest in settling and quieting litigation.

2    This is particularly true in class action suits which are now an ever increasing burden to so

3    many federal courts and which frequently present serious problems of management and

4    expense." *Van Bronkhorst*, 529 F.2d at 950; *accord Molski*, 318 F.3d at 953.

5         Here, there are pending, complicated motions that, if decided, would have

6    significant ramifications on the litigation – a Motion for Judgment on the Pleadings and a

7    Motion for Choice of Law Determination.  Similarly, LifeLock is prepared to

8    preemptively challenge class certification[51] and MDL Plaintiffs are prepared to move

9    forward with additional discovery.   Continued litigation will therefore be expensive,

10   complex, and time consuming.  For these reasons, preliminary approval of the settlement

11   agreement is appropriate.

12   **C.    The Substantial Injunctive Relief Provided by the Settlement
        Agreement Favors Preliminary Approval**

13        In evaluating the fairness of the consideration offered in settlement, it is not the

14   role of the court to second-guess the negotiated resolution of the parties.  "[T]he court's

15   intrusion upon what is otherwise a private consensual agreement negotiated between the

16   parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

17   that the agreement is not the product of fraud or overreaching by, or collusion between,

18   the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

19   adequate to all concerned." *Hanlon*, 150 F.3d at 1027, quoting *Officers for Justice v. Civil*

20   *Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982); *accord Rodriguez v. West*, 563 F.3d at

21   965.  The issue is not whether the settlement could have been better in some fashion, but

22   whether it is fair:  "Settlement is the offspring of compromise; the question we address is

23   _____

24   [51] For example, LifeLock believes that Plaintiffs cannot meet the superiority requirement
     of Rule 23(b)(3) due to the FTC settlement. *See, e.g., Kamm v. California City Dev. Co.*,

25   509 F. 2d 205, 213 (9th Cir. 1975) (Rule 23(b)(3) damages class was not "superior"
     because the California AG and Real Estate Commissioner had already obtained restitution

26   through administrative action.)

1   not whether the final product could be prettier, smarter or snazzier, but whether it is fair,

2   adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

3          Here, the Settlement Agreement provides for comprehensive injunctive relief—*i.e.*,

4   significant changes in LifeLock's terms and conditions of subscription—that benefit past,

5   present and future subscribers.  In addition to imposing the restrictions mandated under

6   the FTC settlement, the proposed class settlement prohibits LifeLock from seeking to

7   enforce class-action waivers or arbitration provisions in future disputes.  These injunctive

8   provisions respond directly to challenges asserted in the Master Amended Complaint and

9   complaints in the Underlying Actions and Related State Court Actions, and thus provide

10  additional relief explicitly requested by the class.

11         Moreover, although this settlement does not directly provide for monetary

12  payments to class members, it specifically preserves and is conditioned upon their right to

13  participate in the $11 million FTC consumer-redress program.  And of course, class

14  members need not accept this settlement—they have the right to exclude themselves and

15  pursue individual legal claims if they so desire.[52]  Also, LifeLock no longer engages in the

16  conduct challenged by Plaintiffs and has agreed to injunctive relief directly responsive to

17  Plaintiffs' claims.  The benefit to class members therefore favors preliminary approval.

18         **D.     The Advanced Stage of the Proceedings Favors Preliminary Approval**

19         These class actions have proceeded for two full years, and are well beyond their

20  initial stages.  The named plaintiffs in the MDL Master Complaint and in the *Falke* action

21  have been deposed.  Dispositive motions have been fully briefed and, in the *Falke* case,

22  already adjudicated.  Informal discovery necessary to facilitate settlement has been

23  exchanged.  And Plaintiffs have had the benefit of the results of almost three years of

24  regulatory scrutiny and due diligence.  Accordingly, the parties were able to assess the

25

26  [52] (Agmt., ¶ 16.)

AW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   relative strengths and weaknesses of their respective positions, and to compare the

2   benefits of the proposed settlement agreement to further litigation.  Counsel and the Court

3   are therefore adequately informed to evaluate the fairness of the proposed settlement.

4   Conte and Newberg, Newberg on Class Actions (4th ed. 2004) at § 11:41; *accord Molski*,

5   318 F.3d at 953, *Officers for Justice*, 688 F.2d at 626.

6           **E.**      **The Settlement Was Reached After Months of Arm's-Length**

7                   **Negotiations and Is Not the Product of Collusion**

8         The lengthy and extensive arm's-length settlement negotiations further demonstrate

9   the fairness of the settlement that was reached, and that the settlement is not a product of

10  collusion.  Counsel for LifeLock and Plaintiffs each zealously negotiated on behalf of

11  their clients' best interests and a settlement was reached only after multiple settlement

12  proposals had been exchanged and rejected.[53]  The impetus for the ultimate compromise

13  was LifeLock's settlement with the FTC and AGs, which will establish a fund for

14  consumer redress that Plaintiffs concede is fair and adequate, and LifeLock's cessation of

15  certain conduct alleged in the Master Amended Complaint.  It was only after—and

16  specifically because of—the monetary redress provision in the FTC settlement that the

17  parties to these class actions considered and negotiated an injunction-only settlement.

18  And it was only after the substantive injunctive relief terms were agreed upon that the

19  parties endeavored to negotiate attorneys' fees, costs and incentive awards.[54]

20  **V.**     **THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

21        The parties have agreed to a proposed notice plan to be administered by Rust.  As

22  described below, notice will be sent electronically to all subscribers for whom LifeLock

23  has current and valid e-mail information and by first class mail notice to all other

24  /////

---

25

26  [53] (Sacks Decl., ¶¶ 6-14; Carey Decl., ¶¶ 7-16.)

    [54] (Sacks Decl., ¶¶ 10-12; Carey Decl., ¶¶ 11-12.)

1  LifeLock subscribers.  Notice will also be published through a dedicated Internet website

2  describing the settlement and providing access to all relevant documents.[55]

3       Individual summary e-mail notice will be sent to the roughly 1.6 million class

4  members who provided e-mail addresses to LifeLock and specifically instructed LifeLock

5  to communicate with them by electronic mail regarding their subscriptions.  The summary

6  e-mail will link directly to the settlement website and the website for the FTC redress

7  program, and will also provide contact information for Class Counsel.[56]

8       Individual summary first-class direct mail notice will be sent to class members for

9  whom LifeLock does not have an e-mail address on file, or for whom the e-mail notice

10  described above is returned as undeliverable.  The notice will be sent to the last known

11  address of the class member derived from LifeLock's subscription records, which shall be

12  updated by Rust through the National Change of Address Database of the U.S. Postal

13  Service prior to mailing.  The summary postcard will provide the URL of the settlement

14  website and of the website for the FTC redress program.  It will also provide the address

15  for Class Counsel to whom persons without Internet access can direct requests for further

16  details of the settlement.[57]

17       Rust will also establish a settlement website describing the relevant details in a

18  question-and-answer format.  All relevant documents will be available for review and

19  download, including the Settlement Agreement and this Court's orders.  It will provide a

20  direct link to the website for the FTC redress program, and it will also provide instructions

21  on how class members can object to or exclude themselves from the settlement if they

22  choose to do so.[58]  A link to the settlement website will be prominently placed on

23  /////

---

24  [55] (Agmt., ¶¶ 12-13).

25  [56] (Agmt., ¶ 12 & Attachment A.).

26  [57] (Agmt., ¶ 12 & Attachment B.)
    [58] (Agmt., ¶ 13 & Attachment C.)

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   LifeLock's website home page, so that it will be easily located by anyone performing an

2   Internet search regarding the company.[59]

3          Finally, LifeLock will send notice of the settlement via Federal Express to

4   appropriate federal and state officials as required by the Class Action Fairness Act, 28

5   U.S.C. § 1715(b), not later than ten days after this filing.[60]

6          This notice plan, combined with the right to exclude themselves from the

7   settlement, ensures that class members' due process rights are amply protected. *See* Fed.

8   R. Civ. P. 23(c)(2)(A); *Molski*, 318 F.3d at 948, 952 (holding district court properly

9   certified Rule 23(b)(2) class, but erred in failing to provide an opt-out right and failing to

10  require direct notice to class members); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 864

11  (1999) (expressing concern regarding constitutionality of non-opt-out classes.)[61]

---

12  [59]  (Agmt., ¶ 13.)

13  [60]  (Agmt., ¶ 14.)

14  [61]  The notice provided in this action goes beyond what is necessary as even a litigated
    Rule 23(b)(2) class does not require notice. Fed. R. Civ. P. 23(c)(2)(A) ("For any class

15  certified under Rule 23(b)(1) or (2), the court *may* direct appropriate notice to the class.")
    (emphasis added); *see also* Manual for Complex Litigation § 21.311 (4th ed. 2004) (notice

16  in Rule 23(b)(2) actions is "within the district judge's discretion" and that "[i]f notice is
    appropriate, it need not be individual notice because, unlike a Rule 23(b)(3) class, there is

17  no right to request exclusion from Rule 23(b)(1) and (b)(2) classes"). Unlike class actions
    certified under Rule 23(b)(3), which require individual notice to class members and the

18  opportunity to opt out of the settlement, class actions certified under Rule 23(b)(2)
    ordinarily do not require individual notice because there is greater cohesion of interest in a

19  23(b)(2) class, as individual damage claims are not at stake. *See Barahona-Gomez v.*
    *Reno*, 167 F.3d 1228, 1236 (9th Cir. 1999) ("Notice is not required in Rule 23(b)(2) class

20  actions."); 7 B Charles Alan Wright *et al.*, Fed. Practice and Procedure § 1793 (3d ed.

21  2006) (notice is not as important for Rule 23(b)(2) classes "because the class typically will
    be more cohesive"); Fed. R. Civ. P. 23 advisory committee's note (2003 Amendments)

22  ("[t]he authority to direct notice to class members in a (b)(1) or (b)(2) class should be

23  exercised with care" because there is no right to request exclusion and because of the
    potentially "crippl[ing]" cost of providing notice). Accordingly, in a Rule 23(b)(2)

24  settlement class, the Court need look only to the reasonable notice required by Rule

25  23(e)(1)(B), applicable to class settlements. Nonetheless, as the cited authority

26  establishes, by providing direct notice supplemented by Internet publication, the notice

---

The same type of notice plans have been approved repeatedly by courts in this and other jurisdictions as the best notice practicable. *See Browning v. Yahoo! Inc.*, 2006 WL 3826714, **8-9 (N.D. Cal. 2006) (summary notice by e-mail supplemented by first class mail where the e-mail notice bounced back as undeliverable); *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 2008 WL 1990806, *3 (N.D. Cal. 2008) (identity and location of class members determined through Wal-Mart's electronic records); *In re Diet Drugs Products Liability Litigation*, 226 F.R.D. 498, 520 (E.D. Pa. 2005) (holding individualized notice plus Internet publication fulfilled the "best notice practicable" requirement of Rule 23(c)(2)"); *In re Lupron Marketing and Sales Practices Litigation*, 228 F.R.D. 75, 85 (D. Mass. 2005) (noting effectiveness of settlement website as means of publication).

## VI.   THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE FOR CERTIFICATION UNDER RULE 23(B)(2)

To qualify for certification, an action must satisfy Rule 23(a) as well as one of the three subdivisions of Rule 23(b). Fed. R. Civ. P. 23(a), (b); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 162–63 (1974); *Hanlon*, 150 F.3d at 1022. Here, for the purposes of settlement only, LifeLock and Plaintiffs (including the plaintiffs in the Related State Court Actions), all agree that this Court should certify a nationwide class in these proceedings under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

### A.   The Settlement Class Satisfies the Rule 23(a) Requirements for Certification

Rule 23(a) permits a case to be maintained as a class action if:
(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

/////

//////

_____

provided here is the best notice practicable.

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   Fed. R. Civ. P. 23(a). Each of the four requirements of Rule 23(a)—numerosity,

2   commonality, typicality, and adequacy—are met for the limited purpose of conditional

3   approval in this case.

4        The numerosity requirement of Rule 23(a)(1) requires that "the class is so

5   numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also*

6   *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Courts acknowledge that

7   numerosity will normally exist when the class consists of 40 or more members.

8   *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007). LifeLock's

9   records indicate that over two million persons fall within the scope of the class.[62] As

10   such, the numerosity requirement set forth in Rule 23(a)(1) is satisfied.

11        The commonality requirement of Rule 23(a)(2) requires that there be questions of

12   law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *Rodriguez v. Hayes*, 591 F.3d at

13   1122. Unlike the predominance requirement applicable to a Rule 23(b)(3) class, the

14   commonality threshold under Rule 23(a) is not high. "One significant issue common to

15   the class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 509 F.3d

16   1168, 1177 (9th Cir. 2007), citing *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352

17   (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998). In cases, such as this one, involving

18   alleged material misrepresentations and omissions, issues regarding the falsity and

19   materiality of the alleged misrepresentations and omissions easily satisfy the commonality

20   requirement. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)

21   (commonality satisfied in securities fraud case). Specific common issues of law and fact,

22   of which there only needs to be one, include: (1) whether LifeLock could lawfully place

23   fraud alerts on behalf of consumers; (2) whether LifeLock's statement that it could legally

24   place fraud alerts on behalf of its members was false, misleading, or deceptive; and (3)

25

26

---

[62] (Overton Decl., ¶ 12.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1   whether Arizona law governs all claims against LifeLock.  Thus, commonality exists

2   among the proposed settlement class members.

3        The typicality requirement of Rule 23(a)(3) requires that the claims of the class

4   representatives be "typical of the claims or defenses of the class."  Fed. R. Civ. P.

5   23(a)(3).  This requirement "[is] 'satisfied when each class member's claim arises from

6   the same course of events, and each class member makes similar legal arguments to prove

7   the defendant's liability.'"  *Rodriguez v. Hayes*, 591 F.3d at 1124, quoting *Armstrong v.*

8   *Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Typicality requires only that the

9   representative's claims are "reasonably co-extensive with those of absent class members;

10  they need not be substantially identical."  *Id.*, quoting *Hanlon*, 150 F.3d at 1020.  And

11  typicality exists when the representative plaintiffs and the proposed class members

12  challenge the same course of conduct.  *Dukes*, 509 F.3d at 1184; *CRLA, Inc. v. Legal*

13  *Services Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990); *see also General Tel. Co. v. Falcon*,

14  457 U.S. 147, 158 n.13 (1982) (typicality and commonality requirements tend to

15  "merge.").

16       Here, the requisite nexus for typicality exists between the claims of the named

17  Plaintiffs and the absent class members because they were all LifeLock members and

18  received the same services and were subject to substantively analogous terms and

19  conditions—each of them would have been equally affected by issues such as the legality

20  and effectiveness of LifeLock's placement of fraud alerts, the scope and operation of its

21  Service Guarantee, and whether LifeLock acted in compliance with the terms and

22  conditions of its subscription agreements.

23       Rule 23(a)(4) demands that the representative parties will fairly and adequately

24  protect the interests of the class.  *Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005).

25  Adequacy is mandated to protect the due process rights of both the absent class members

26  and defendants.  *Rodriguez v. West*, 563 F.3d at 959; *see also Hanlon*, 150 F.3d at 1020

1  (absent class members must be adequately represented in order to be bound by a court's

2  judgment).  In order to satisfy the adequacy requirement, two components must be met:

3  (1) the class representative must have no interests antagonistic to the class and be able to

4  prosecute the action vigorously, and (2) class counsel must possess the competence to

5  undertake the litigation.  *In re Mego Fin'l Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir.

6  2000); *Walter v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998); *Crawford v. Honig*, 37 F.3d

7  485, 487 (9th Cir. 1994).

8       Here, the plaintiffs seeking to act as class representatives have no interests that are

9  adverse or antagonistic to the interests of the class members.[63]  To the contrary, the

10  settlement provides for across-the-board injunctive relief that will equally benefit all

11  members.[64]

12       Proposed Class Counsel, Hagens Berman, who this Court has previously selected

13  as Interim Lead Counsel, also satisfies the adequacy test based on their experience in

14  complex litigation and class actions.  Counsel has represented the interests of the proposed

15  class in motion practice on both procedural issues and on the merits, defended depositions

16  and vigorously prosecuted these consolidated cases.  *See Lyons v. Ga.-Pac. Corp.*

17  *Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (finding class

18  counsel that "assert[ed] and defend[ed] the interests of [all] of the [class] members" with

19  "forthrightness and vigor" to be adequate) (citations omitted); *see also Hanlon*, 150 F.3d

20  at 1021 (9th Cir. 1998) ("We find counsel's prosecution of the case sufficiently vigorous

21  to satisfy any Rule 23(a)(4) concerns.").  Accordingly, the putative class representatives

22  and Class Counsel are adequate representatives of the tentative Settlement Class under

23  Rule 23(a)(4).[65]

24

25  [63] (Carey Decl., ¶ 17.)

26  [64] (Carey Decl., ¶ 17.)
[65] (Carey Decl., ¶ 2.)

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**B.   The Settlement Class Satisfies the Requirements for Certification of a Rule 23(b)(2) Settlement Class**

   **1.   LifeLock Has Acted on Grounds Generally Applicable to the Settlement Class**

In addition to the four requirements of Rule 23(a), parties seeking class certification under Rule 23(b)(2) must show that the defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); *Rodriguez v. Hayes*, 591 F.3d at 1125. This inquiry is "encompassed by the commonality requirement of Rule 23(a)." *See Diaz v. Hillsborough County Hosp. Auth.*, 165 F.R.D. 689, 695 (M.D. Fla. 1996); *accord McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) ("Rule 23(b)(2)'s requirement that a defendant have acted consistently towards the class is plainly more permissive than 23(b)(3)'s requirement that questions to the class *predominate* over individual issues.") Here, LifeLock is alleged to have acted on grounds generally applicable to class members through the marketing, advertising and administration of its identity-theft protection services and its Service Guarantee.

In addition, certification under Rule 23(b)(2) is proper when the relief sought necessarily affects all class members. *Rodriguez v. Hayes*, 591 F.3d at 1125-26; *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1157 (11th Cir. 1983). Here, the Settlement Agreement provides an injunctive remedy to all class members. While LifeLock maintains that it has not violated any law or statute, the injunctive relief agreed upon is precisely what is contemplated by Rule 23(b)(2).

   **2.   Certification Under Rule 23(b)(2) is Proper Because Plaintiffs Primarily Seek Injunctive Relief.**

As an additional requirement under Rule 23(b)(2), courts in the Ninth Circuit require that injunctive relief be the predominant form of relief sought by the class. *Molski*, 318 F.3d at 950 ("the injunctive relief appeared to be the primary goal in the litigation and the settlement agreement."); *see also Probe v. State Teachers' Ret. Sys.*, 780

AW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

F.2d 776, 780 (9th Cir. 1986); *see* Fed. R. Civ. P. 23(b)(2) advisory committee's note (1966).  Here, although Plaintiffs initially sought both monetary and injunctive relief, the FTC settlement changed dramatically the landscape of their claims—the hoped-for monetary relief is now available to LifeLock subscribers through the FTC settlement. Indeed, as previously discussed, the FTC settlement raises serious questions about whether a Rule 23(b)(3) damages class could be maintained should these class actions proceed.  Thus, today, in this litigation, injunctive relief is the predominant relief sought by the class and certification under Rule 23(b)(2) is therefore appropriate. *Molski*, 318 F.3d at 951 n. 16 (stating class settlement for injunction and release of damages claims can be certified "under Rule 23(b)(2), giving the class members the right to opt-out under [the district court's] discretionary authority as provided in Rule 23(d)(2)"), citing *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897-98 (7th Cir. 1999).

## VII.   CONCLUSION

For more than two years, LifeLock vigorously defended against accusations by regulators and class action plaintiffs regarding its business practices.  The regulatory efforts have now been settled, providing significant benefit, both monetarily and by means of injunctive relief, to LifeLock's subscribers.  Additional injunctive benefits will flow to all class members if the proposed class action settlement is approved by this Court, and they can still avail themselves of the monetary relief available to them under the FTC agreement.  Continued litigation in federal and state courts seeking additional monetary compensation in not in the best interest of the settlement class given LifeLock's change in behavior and the relief afforded them under the terms of the settlement agreement.  Thus, the proposed settlement is fair, reasonable and adequate under the circumstances, and satisfies the requirements of Rule 23(b)(2).  The parties therefore respectfully move this Court to issue an Order (1) granting preliminary approval of the proposed settlement, (2) conditionally certifying a Settlement Class, (3) approving the proposed notice plan, (4)

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

appointing Class Counsel, (5) appointing Melvyn Blake, Alva Blake, Franco Vega, Byrl

Lane and Jason Sbalcio as Settlement Class Representatives, (6) appointing Rust

Consulting, Inc. as Settlement Administrator, and (7) setting the date for a final fairness

hearing.

DATED this 26th day of March, 2010.

HAGENS BERMAN SOBOL SHAPIRO LLP


By   /s/ Robert B. Carey
    Robert B. Carey
    Attorneys for Plaintiffs
    Melvin Blake, Alva Blake, Franco Vega,
    Byrl Lane, and Jason Sbalcio

GREENBERG TRAURIG LLP


By   /s/ Pamela M. Overton
    Pamela M. Overton
    Peter A. Antonucci
    Kristine K. Campbell
    Attorneys for Defendants
    LifeLock, Inc. and Richard Todd Davis

DLA PIPER LLP (US)


By   /s/ Luanne Sacks
    Luanne Sacks
    Attorneys for Defendants
    LifeLock, Inc. and Richard Todd Davis

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1

## CERTIFICATE OF SERVICE

2

3   ☒   I hereby certify that on March 26, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

4

5   Robert B. Carey, rcarey@hbsslaw.com
Leonard W. Aragon, leonard@hbsslaw.com

6   Edward H. Britt, ebritt@brittlawgroup.com
Ryan Skiver, rskiver@brittlawgroup.com

7

8   George K. Lang, george@freedweiss.com

9   David S. Paris, david@marksklein.com

10  Patrick Howard, phoward@smbb.com

11  Joel Grant Woods, gw@grantwoodspc.net, sharonb@grantwoodspc.net

12  Steve W. Berman, steve@hbsslaw.com, heatherw@hbsslaw.com

13  Justin M. Klein, justin@marksklein.com, joanne@marksklein.com

14  Simon Bahne Paris, sparis@smbb.com, cdfonda@smbb.com, jrose@smbb.com

15  Thomas A. Zimmerman, Jr tom@attorneyzim.com

16  William F. Murphy, wfm@wirepaladin.com, slm@dillinghammurphy.com

17  Michael P. Cross, mcross@earthlaw.com, agostnell@earthlaw.com

18  Stuart McKinley Paynter, stuart@smplegal.com

19  Jonathan Shub, jshub@seegerweiss.com

20  Nina D Boyajian boyajiann@gtlaw.com

21  Leif D Garrison lgarrison@earthlaw.com, gbeck@careylaw.com

22  Christine Marie Fox cfox@kaplanfox.com

23  Laurence D King lking@kaplanfox.com, agutierrez@kaplanfox.com

24  TerriAnne Benedetto tbenedetto@seegerweiss.com

25

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

☒     I hereby certify that on March 26, 2010, I served the attached document via U.S. Mail on the following, who are not registered participants of the CM/ECF System:

Honorable Mary H. Murguia
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 525
401 West Washington Street, SPC 53
Phoenix, AZ 85003-2154


                                             /s/  Tammy Mowen

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000