**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Pamela M. Overton, SBN 009062; overtonp@gtlaw.com
Kristine K. Campbell, SBN 021876; campbellk@gtlaw.com

Peter A. Antonucci (admitted *pro hac vice*); antonuccip@gtlaw.com
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166

Luanne Sacks (admitted *pro hac vice*); luanne.sacks@dlapiper.com
DLA Piper LLP
555 Mission Street, Suite 2400
San Francisco, California 94105-2933

*Attorneys for Defendant LifeLock, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| IN RE LIFELOCK, INC. MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 08-1977-MHM-PHX<br><br>**DECLARATION OF PAMELA M. OVERTON IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
|---|---|

Pamela M. Overton, under penalty of perjury, deposes and says:

1. I am a shareholder in the law firm Greenberg Traurig, LLP and I have been licensed to practice law in the State of Arizona since 1983. I make this declaration based on my own personal knowledge of the history of this litigation, having been personally

involved since the time the first putative class action that comprises this MDL, *Bryl Lane v. LifeLock, Inc.*, No. 2:08-CV-00594-PHX-MHM was filed and served in March 2008.

2. I am one of the attorneys of record for Defendants LifeLock, Inc. ("LifeLock") and Richard Todd Davis. I have personal knowledge of the matters set forth in this Declaration.

3. I submitted a previous declaration to this Court on March 26, 2010 in connection with the parties' Motion for Preliminary Approval of Class Action Settlement, Approval of Class Notice, and Conditional Certification of Settlement Class.

**LifeLock's Identity Protection Services**

4. LifeLock is an identity theft protection business based in Tempe, Arizona. It provides a suite of proactive services designed to help prevent or limit identity theft. Monthly subscriptions fees range between $5.00 and $15.00, depending on the scope of services selected.

5. LifeLock's method of providing identity theft protection has changed over time. From 2005 through September 8, 2009, LifeLock's services included sending requests to credit bureaus to place "fraud alerts" on behalf of its subscribers. After September 8, 2009, LifeLock moved away from the fraud alert model to a new, more robust, technology service based on computer algorithms, intended to proactively detect potential identity theft.

**LifeLock's Services and Marketing**

6. LifeLock's Terms and Conditions of membership ("T&Cs") were displayed on its website throughout the class period. Moreover, subscribers who enroll online were electronically directed to the T&Cs and had affirmatively acknowledged they read and accepted them to complete the enrollment process. Other, non on-line, subscribers were directed, via mail or e-mail correspondence, to review the T&Cs. In addition, all of

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LifeLock's current advertising and promotional material prominently informs viewers to visit LifeLock's website and read the T&Cs.

**Relevant Litigation**

7. The cases currently consolidated within this MDL proceedings (the "Underlying Actions") include: (1) *Bryl Lane v. LifeLock, Inc.*, No. 2:08-CV-00594-PHX-MHM (D. Ariz filed March 27, 2008); (2) *Warren Pasternack and Susan Pasternack v. LifeLock, Inc. and Richard Todd Davis*, No. 3:08-CV-02098-FLW (D.N.J. filed March 28, 2008); (3) *Vilma Martinez-Azoy v. LifeLock, Inc. and Richard Todd Davis*, No. 2:08-CV-21989-KMM (S.D. Fla. filed May 23, 2008); (4) *Robert Dillon v. LifeLock, Inc. and Richard Todd Davis*, No. 2:08-CV-04515-SVW (C.D. Cal. filed May 27, 2008); (5) *James Kondrat and Susan Kondrat v. LifeLock, Inc.*, No. 1:08-CV-03244-JWD (N.D. Ill. filed June 5, 2008); (6) *Jason Sbalcio v. LifeLock, Inc.*, No. 1:08-CV-02799 (D.N.J. filed June 5, 2008); (7) *Tommy Ly v. LifeLock, Inc. and Richard Todd Davis*, No. 2:08-CV-00242-TJW (E.D. Tex. filed June 16, 2008); (8) *Mario Aliano v. LifeLock, Inc.*, No. 1:08-CV04401 (N.D. Ill. filed August 4, 2008); (9) *Robert Berland v. LifeLock, Inc.*, No. 2:08-CV-01493 (D. Ariz. filed August 13, 2008); (10) *Franco Vega v. LifeLock, Inc.*, No. 2:08-1032-CJC-MLG (C.D. Cal. filed September 16, 2008); (11) *Brian Lackey v. LifeLock, Inc.*, No. 1:08-CV-02172 (D. Colo. filed October 7, 2008); and (12) *Melvyn Blake v. LifeLock, Inc.*, No. 2:08-CV-2162 (D. Ariz. filed December 3, 2008).

8. Two of the fourteen cases originally consolidated into the MDL were *Gerhold v. LifeLock, Inc.*, Circuit Court of Jackson County, West Virginia, Civil Action No. 08-C-69 and *Falke v. LifeLock, Inc.*, Circuit Court for Washington County in Maryland, Civil Action No. 21-C-08-30505CN. However, these two matters were subsequently remanded back to their originating state courts by order of this Court dated July 24, 2009. Thereafter, Plaintiffs in the *Gerhold* case sought to substitute a new class representative by filing an amended second complaint captioned *Rapp v. LifeLock, Inc.*,

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

allege that the placement of fraud alerts had a negative effect on a subscriber's credit score, creditworthiness, credit report, credit file, and ability to secure credit. They also allege violations of the Arizona Consumer Fraud Act and similar federal and state statutes governing consumer-protection, unfair and deceptive practices and false advertising that LifeLock breached its subscription agreements because it could not lawfully perform one of the promised services – requesting the placement of fraud alerts by credit bureaus on behalf of the subscriber. In addition to asserting that LifeLock violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., Plaintiffs make claims under the West Virginia Consumer Credit and Protection Act based on the theory that LifeLock was engaged in credit repair, credit monitoring or credit remediation services. They further allege that LifeLock's $1 Million Service Guarantee is insurance, sold in violation of relevant state insurance laws and regulations and that LifeLock participated in false and misleading advertising of an insurance product. Additionally, Plaintiffs assert that LifeLock charged for services it did not provide and failed to implement and maintain adequate security measures and protocols to prevent disclosure of personal, confidential information obtained from its subscribers and also misrepresented the adequacy of such security measures and protocols. There are also allegations of deception, false pretenses, fraud, fraud in the inducement, negligent misrepresentation, unfair competition, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, and unconscionability. Based on these broad claims, Plaintiffs ask for injunctive relief, declaratory relief, restitution, rescission, disgorgement of ill-gotten gains and damages comprised of the return of their subscription fees.

**Current Status of the MDL Proceedings**

13. Pursuant to this Court's order, on July 31, 2009, Hagens Berman, in its Court-appointed role as Interim Lead Counsel (hereinafter "Interim Lead Counsel"), filed a Master Complaint in these MDL proceedings. On November 6, 2009, LifeLock filed a

Circuit Court of Jackson County, West Virginia, Civil Action No. 08-C-69. The *Gerhold*, *Rapp* and *Falke* matters are referred to collectively as the "Related State Court Actions." A copy of the Related State Court Action Complaints are attached hereto at **Exhibit 1**.

9. The *Falke* matter has been stayed by order of the State Court of Maryland and the *Rapp* and *Gerhold* have been stayed by order of the West Virginia court. The parties anticipate that those actions will be dismissed, with prejudice, once this Court approves the final settlement being proposed by the parties in this case.

10. The Underlying Actions and Related State Court Actions were filed as putative class actions seeking certification under Rule 23(b)(2) and/or (b)(3) or under state-court analogues. LifeLock's records indicate that over two million persons fall within the scope of the settlement class.

11. Counsel in the Related State Court Actions has expressly agreed to the proposed settlement terms and supports certification of a nationwide settlement class. It is important to note that a majority of the Underlying Actions seek certification of a nationwide class. Accordingly, LifeLock subscribers resident in Maryland and West Virginia are included in the nationwide class settlement, notwithstanding the remand of the *Falke*, *Rapp*, and *Gerhold* cases.

**Plaintiffs' Claims and Allegations**

12. The complaints in the Underlying Actions and the Related State Court Actions, as well as the MDL Master Complaint, challenge the efficacy of LifeLock's services and practices in preventing identity theft and also challenge the representations made in advertisements, in a variety of contexts. Specifically, Plaintiffs complain that LifeLock misrepresented the nature and effectiveness of its identity theft protection services, particularly the scope of its obligations under the Service Guarantee, the accuracy of LifeLock's Terms and Conditions, the legality of LifeLock's services, and

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) on grounds that, inter alia, the Master Complaint lacks the requisite pleading specificity and that many of the putative class members lack standing. That motion has been fully briefed and is currently pending before this Court for consideration.

14. On December 11, 2009, the MDL plaintiffs filed a motion requesting application of Arizona law to the consolidated claims. In response, LifeLock argued that the MDL Plaintiffs failed to satisfy their burden to show that Arizona law can properly be applied to the claims of a consumer class comprised of residents of forty-eight (48) states. That motion has also been fully briefed and is currently pending before this Court for consideration.

15. This Court ordered that discovery be completed by August 31, 2010, and directed that any motion for certification be made no later than September 30, 2010. The parties engaged in discovery and LifeLock took the depositions of the five Plaintiffs named in the Master Complaint—Mr. Lane, Mr. Vega, Mr. Sbalcio, and Dr. and Mrs. Blake.

**Current Status of the Related State Court Actions**

16. In the Related State Court Action, *Falke v. LifeLock*, the Washington County Circuit Court heard LifeLock's motion to dismiss on January 7, 2010. The court granted the motion in part and denied it in part, and set a hearing on class certification for April 4, 2010. LifeLock thereafter deposed the two named plaintiffs, Dr. and Mrs. Falke. As noted above, the *Falke* matter has now been stayed pending settlement approval by this Court.

17. In the Related State Court Action *Gerhold v. LifeLock*, the plaintiff filed an amended complaint seeking to substitute Mr. Rapp as the class representative and to change the caption to read *Rapp v. LifeLock*.

18. The Gerhold/Rapp case has also been stayed pending settlement approval by this Court.

**LifeLock's May 2009 Meeting with NAAG**

19. On May 5, 2009, counsel for LifeLock, including myself, Peter Antonucci and Robert Sherman, all shareholders of Greenberg Traurig, together with Clarissa Cerda, then General Counsel and Secretary for LifeLock, met in Washington, D.C. with State Attorneys General ("AGs") from 24 different states. At this meeting, counsel for LifeLock made a comprehensive presentation to the AGs, describing LifeLock's business model, providing historical background, describing the services, and the plans and philosophies of the company on a "going forward" basis. We also responded to specific inquires made by the AGs regarding advertising and marketing issues and discussed proposed changes to the business model.

20. Thereafter, Peter Antonucci met separately with State Attorneys General from Florida and New York, and Bob Sherman engaged in ongoing discussions with individual State AGs, especially Debbie Hagen of Illinois, who served as lead counsel for the AGs.

**Settlement Discussions Between Interim Lead Counsel and Defendants**

21. Plaintiffs and LifeLock engaged in a series of confidential settlement communications telephonically, in person, and in writing over the last year. The initial settlement meeting between counsel for LifeLock and Interim Lead Counsel took place on August 13, 2009 when Peter Antonucci and I convened a face-to-face meeting with Rob Carey and Leonard Aragon of the Hagens Berman law firm. At this initial meeting, Mr. Carey and Mr. Aragon informed us that they had been in contact with several AGs and were generally familiar with the status of the collective AGs inquiry and the ongoing FTC investigation. They requested that LifeLock agree to informal document discovery relating to financial information to better assist them in understanding the financial

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

condition of the company and to educate them on the company's operations and status. They requested: revenue figures since inception of the company; a business plan; insurance information; solicitation materials regarding any potential sale of the company; information relating to the company's recent Series D financing; audited financial statements; and documentation of expenditures and expenses. We assured counsel that LifeLock would cooperate and provide sufficient financial data to adequately inform them.

22. On September 4, 2009, Plaintiffs transmitted to LifeLock correspondence formalizing their request for certain financial data. Plaintiffs enumerated approximately eight specific categories of information and documents requested, generally consistent with the categories enumerated in paragraph 23 above.

23. On September 18, 2009, Mr. Antonucci and I participated in a yet another conference call with Interim Lead Counsel concerning Plaintiffs' September 4th document requests. We explained to Mr. Carey and Mr. Aragon that it was LifeLock's intent to cooperate and produce relevant financial information, however, we expressed our position that many of the document requests were outside the scope of relevant settlement communications. Counsel went through each of the document requests and engaged in a detailed discussion about how LifeLock derives income from its members, membership fees, services, and expenses. We also discussed LifeLock's consumer base and information regarding the fulfillment of claims under the $1 Million Guarantee. During this telephonic meeting, LifeLock committed to provide Plaintiffs with additional information concerning membership revenue on a quarterly basis the parties agreed to reconvene in two weeks.

24. While the described settlement discussions were ongoing with Interim Lead Counsel, LifeLock was simultaneously engaged in numerous and ongoing settlement negotiations with the FTC and the AGs. Andrew Berg of Greenberg Traurig was lead

counsel for LifeLock and Todd Davis on all negotiations and meetings with the FTC. (*See* Declaration of Andrew Berg filed concurrently herewith.)

25. In October 2009, with a desire to focus on achieving a global resolution with the FTC, the AGs and the Plaintiffs in the Class Actions, LifeLock engaged separate settlement counsel, Luanne Sacks of DLA Piper, specifically for the purpose of focusing on and facilitating comprehensive settlement negotiations.

26. Shortly thereafter, Peter Antonucci and I again met with Interim Lead Counsel and Ms. Sacks attended by telephone. At that meeting, LifeLock provided additional financial information including information from Q1-2005 through Q1-2009: including quarterly breakdown of information on gross new members, cancelled members, net new members, gross receipts, refunds, revenues, gross margins, EBITDA, income/(loss) from operations and earnings/(loss) before taxes. We engaged in a productive exchange about what the members meant and again discussed specifics regarding the business operations and services of LifeLock.

27. Thereafter, Plaintiffs tendered a written settlement demand to LifeLock on November 25, 2009. LifeLock rejected that demand and provided a separate settlement offer on December 4, 2009. This written settlement offer included a detailed description of what LifeLock proposed to offer the putative class, including estimates of the financial value of the offer.

28. On December 15, 2009, Plaintiffs rejected LifeLock's settlement offer. With negotiations seemingly stalled, Defendants proceeded to take the depositions of all the named Plaintiffs in the MDL and the named Plaintiffs in the Maryland related action, *Falke v. LifeLock, Inc.* These depositions took place from mid-January through mid-February 2010.

29. LifeLock elicited deposition testimony from the proposed class representatives that it believes would warrant summary judgment and denial of class

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

certification. Specifically, from LifeLock's perspective, Plaintiffs' testimony demonstrates: (1) they each saw and/or heard different LifeLock advertisements before enrolling; (2) some admitted they were not mislead by LifeLock; (3) those who claimed reliance did so based on differing verbal or written representations by LifeLock; (4) some admitted they were satisfied with LifeLock's services; (5) those who voiced dissatisfaction did so for differing reasons; (6) some admitted they were not damaged; and (7) those who claimed damages did so based on differing theories.

30. On February 19, 2010, after the depositions of the named Plaintiffs in the MDL had been completed, Mr. Antonucci, Ms. Sacks and I once again met with Mr. Carey and Mr. Aragon for several hours to discuss the testimony that had been elicited at the depositions and to inform them of the tentative terms of the FTC and AGs Settlement. In that meeting, Mr. Carey and Mr. Aragon acknowledged that if an $11 million fund was made available to class members pursuant to the tentative FTC Settlement, it would provide significant benefit to the class. We explained that the putative class members in the MDL Proceedings and Related State Court Actions would receive monetary remedies and injunctive relief under the terms of the FTC Settlement even without further prosecution of the pending class action proceedings. We also discussed whether the FTC and AGs Settlements would substantially impair the Plaintiffs' ability to secure certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and expressed differing opinions. We presented case authority that stood for the proposition that class action litigation was not a superior means of adjudication where remedies had already been obtained through similar regulatory proceedings. Mr. Carey expressed his opinion that the FTC and AGs Settlements would not necessarily bar certification under Rule 23(b)(3), but did acknowledge that they could have a negative impact on Plaintiffs' likelihood of success in securing such certification.

31. At that meeting, LifeLock proposed a settlement of the class actions that would provide additional injunctive relief specifically directed to two provisions of the T&Cs that Plaintiffs had challenged and that were not the subject of the FTC or AG investigations or negotiations: (1) the mandatory arbitration provision regarding all disputes with subscribers; and (2) the prohibition against prosecution of any class action claims against it.

32. Following the February 19, 2010 meeting, Ms. Sacks and Interim Lead Counsel spoke on several occasions regarding various aspects of the proposed settlement. On February 25, 2010, counsel for the parties met again. The meeting was attended by Mr. Aragon, Mr. Carey, Mr. Antonucci, Ms. Sacks, and myself for LifeLock and Todd Davis, as well as by LifeLock's Senior Vice President, General Counsel & Secretary, Clarissa Cerda. In addition to engaging in further discussions regarding the substantive terms of the proposed settlement, the parties addressed their mutual belief that it would ultimately be beneficial to resolve all claims in the MDL Proceeding as well as in the Related State Court Actions in a single, nationwide settlement. After discussion, Mr. Carey agreed to seek participation and cooperation from counsel in the Related State Court Actions. The parties ultimately agreed on the benefits to be provided under the settlement, including that the settlement would be conditioned on the payment of $11 million by LifeLock to the FTC for use as consumer redress under the FTC Settlement. The parties specifically agreed that if consumer redress was not afforded under the FTC Settlement, Plaintiffs would have the right to terminate the proposed class action settlement. The parties further agreed that LifeLock would be bound directly to class members for all of the injunctive relief contemplated under the FTC settlement. Last, as a unique term of injunctive relief to be provided under the class action proposed settlement, LifeLock agreed not to prohibit class action litigation nor to require arbitration of disputes with class members.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

33. Counsel for the parties then undertook the preparation of a formal Settlement Term Sheet, which culminated in the execution of the Settlement Agreement, which was submitted to the Court in connection with the parties' Motion for Preliminary Approval of Class Action Settlement, Approval of Class Notice, and Conditional Certification of Settlement Class.

34. On April 16, 2010, this Court issued its Preliminary Approval Order, preliminarily approving the proposed settlement as fair, adequate and reasonable, and in the best interests of the putative class members.

35. In the Preliminary Approval Order, the Court appointed Rust Consulting, Inc. as Settlement Administrator and set forth the procedures for providing notice to the class. As explained in greater detail in the Declarations of Peter A. Antonucci of Greenberg Traurig LLP and Tore Hodne of Rust Consulting, Inc., filed concurrently herewith, all procedures and requirements set forth by the Court in its Preliminary Approval Order have been fully satisfied.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on July 30, 2010, in Phoenix, Arizona.

/s/ Pamela M. Overton
PAMELA M. OVERTON

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## CERTIFICATE OF SERVICE

☒ I hereby certify that on July 30, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrants:

Robert B. Carey, rcarey@hbsslaw.com
Leonard W. Aragon, leonard@hbsslaw.com

Edward H. Britt, ebritt@brittlawgroup.com
Ryan Skiver, rskiver@brittlawgroup.com

George K. Lang, george@freedweiss.com

David S. Paris, david@marksklein.com

Patrick Howard, phoward@smbb.com

Joel Grant Woods, gw@grantwoodspc.net, sharonb@grantwoodspc.net

Steve W. Berman, steve@hbsslaw.com, heatherw@hbsslaw.com

Justin M. Klein, justin@marksklein.com, joanne@marksklein.com

Simon Bahne Paris, sparis@smbb.com, cdfonda@smbb.com, jrose@smbb.com

Thomas A. Zimmerman, Jr tom@attorneyzim.com

William F. Murphy, wfm@wirepaladin.com, slm@dillinghammurphy.com

Michael P. Cross, mcross@earthlaw.com, agostnell@earthlaw.com

Stuart McKinley Paynter, stuart@smplegal.com

Jonathan Shub, jshub@seegerweiss.com

Nina D Boyajian boyajiann@gtlaw.com

Leif D Garrison lgarrison@earthlaw.com, gbeck@careylaw.com

Christine Marie Fox cfox@kaplanfox.com

Laurence D King lking@kaplanfox.com, agutierrez@kaplanfox.com

TerriAnne Benedetto tbenedetto@seegerweiss.com

Joseph Darrell Palmer darell.palmer@palmerlegalteam.com,
maria.carapia@palmerlegalteam.com

Thomas L Cox, Jr tcox009@yahoo.com

☒ I hereby certify that on July 30, 2010, I served the attached document via U.S. Mail on the following, who are not registered participants of the CM/ECF System:

Honorable Mary H. Murguia
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 525
401 West Washington Street, SPC 53
Phoenix, AZ 85003-2154

/s/ Tammy Mowen

AW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000