**HAGENS BERMAN SOBOL SHAPIRO LLP**
Robert B. Carey #011186
Leonard W. Aragon #020977
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
E-Mail: rcarey@hbsslaw.com
        leonard@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-Mail: steve@hbsslaw.com

Interim Lead Counsel for Plaintiffs

[Additional counsel listed on signature page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| IN RE LIFELOCK, INC., MARKETING AND SALES PRACTICES LITIGATION | MDL Docket Civ. No. 2:08-md-01977 ALL CASES  **SETTLEMENT CLASS REPRESENTATIVES' RESPONSE TO OBJECTIONS**  (Assigned to Honorable Mary Murguia) |
|---|---|

Settlement Class Representatives submit the following Response to the Objections filed with the Court.

## I. INTRODUCTION

The Class overwhelmingly supports the settlement. Over 2.2 million notices were e-mailed or mailed to class members, and only twenty objections were lodged. In addition, over 3,200 class members contacted Class Counsel and LifeLock, the overwhelming majority of whom expressed their satisfaction with the settlement or simply wanted more information. The objections are unfounded and misapprehend the nature of the claims and relevant facts. During the course of the litigation and as a consequence of Plaintiffs' efforts, the Settlement Class received virtually everything they sought in the Master Amended Complaint. The settlement secures all other reasonable relief that remains. As such, the settlement should be approved as fair, reasonable and adequate.

## II. ARGUMENT

### A. The Court Should Be Wary Of The Lawyer-Driven Pentz And Daniels Objections

Unfortunately, a small cottage industry of objectors now plagues class action litigation, seeking to interfere with fair and reasonable class settlements in order to extract attorneys' fees. As one court has observed:

> [C]lass actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors, which now seem to accompany every major securities litigation.

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio May 5, 2008).

John J. Pentz, attorney for objector James E. Pentz, is a frequent objector to class settlements, having served as objector counsel in at least 33 cases according to a recent

Lexis search.[1] Formerly appearing under the moniker of "The Objectors Group" and now the "Class Action Fairness Group," Pentz has used his father,[2] wife,[3] mother-in-law,[4] and, apparently, even a deceased grandmother[5] to further his agenda as objector counsel. Mr. Pentz's client in this case, and presumably his relative, joined LifeLock on March 2,

---

[1] *See In re Initial Pub. Offering Secs. Litig.*, 2010 U.S. Dist. LEXIS 68702 (S.D.N.Y. July 7, 2010); *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 2010 U.S. Dist. LEXIS 52001 (D. Nev. May 25, 2010); *Dupler v. Costco Wholesale Corp.*, 2010 U.S. Dist. LEXIS 46938 (E.D.N.Y. Apr. 15, 2010); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30598 (E.D.N.Y. Mar. 29, 2010); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 U.S. Dist. LEXIS 27242 (E.D.N.Y. Mar. 22, 2010); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010); *Larson v. Sprint Nextel Corp.*, 2010 U.S. Dist. LEXIS 3270 (D.N.J. Jan. 15, 2010); *Thornell v. Marsh USA, Inc.* (*In re Ins. Brokerage Antitrust Litig.*), 2009 U.S. Dist. LEXIS 114802 (D.N.J. Dec. 8, 2009); *In re Visa Check/Mastermoney Antitrust Litig.*, 2009 U.S. Dist. LEXIS 124884 (E.D.N.Y. Oct. 16, 2009); *Simonet v. GlaxoSmithKline*, 2009 U.S. Dist. LEXIS 82508 (D.P.R. Sept. 10, 2009); *Park v. Thomson Corp.*, 633 F. Supp. 2d 8 (S.D.N.Y. 2009); *Azizian v. Federated Dep't Stores, Inc.*, 2007 U.S. App. LEXIS 20844 (9th Cir. Aug. 23, 2007); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004); *Morris v. Lifescan, Inc.*, 2003 U.S. App. LEXIS 820 (9th Cir. Jan. 16, 2003); *Schwartz v. Citibank, N.A.*, 2002 U.S. App. LEXIS 21456 (9th Cir. Oct. 10, 2002); *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002); *In re Allstate Ins. Co. Underwriting & Rating Practices Litig.*, 2008 U.S. Dist. LEXIS 107131 (M.D. Tenn. Nov. 14, 2008); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 2007 U.S. Dist. LEXIS 45935 (D. Md. June 18, 2007); *In re Serzone Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 60151 (S.D. W. Va. Aug. 23, 2006); *Barnes v. FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072, at *4 (D. Mass. Aug. 22, 2006); *In re Managed Care Litig.*, 416 F. Supp. 2d 1347 (J.P.M.L. 2006); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005); *In re Compact Disc Minimum Adver. Price Antitrust Litig.*, 2005 U.S. Dist. LEXIS 15306 (D. Me. July 27, 2005); *In re Charter Communs., Inc.*, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005); *In re Paypal Litig.*, 2004 U.S. Dist. LEXIS 22470 (N.D. Cal. Oct. 13, 2004); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004); *Tenuto v. Transworld Sys.*, 2002 U.S. Dist. LEXIS 1764 (E.D. Pa. Jan. 31, 2002); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 2001 U.S. Dist. LEXIS 24121 (E.D. Pa. Nov. 21, 2001); *Benacquisto v. Am. Express Fin. Corp.*, 2001 U.S. Dist. LEXIS 23914 (D. Minn. May 14, 2001); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001).

[2] *See*, *e.g.*, *Tenuto*, 2002 U.S. Dist. LEXIS 1764, at *6.

[3] *See*, *e.g.*, *Taubenfeld*, 415 F.3d 597; *In re Compact Disc Minimum Adver. Price Antitrust Litig.*, 2005 U.S. Dist. LEXIS 43704 (J.P.M.L. July 12, 2005).

[4] *See*, *e.g.*, *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *4.

[5] *See* http://pslranugget.blogspot.com/2005/07/seventh-circuit-shoots-down.html.

2010, <u>after</u> the case was settled and after LifeLock changed its services and advertisements to comply with federal and state law.

One court has referred to Mr. Pentz and the "clients" that he represents as "professional objectors, bringing this appeal not in the interests of the class, but in their own interest." *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3. In commenting on one of Pentz's objections, another court observed:

> The objector's "opposition" to class counsel's fee petition appears to be nothing more than an attempt to receive attorneys' fees. The objector has done nothing more than propose an unsupported, alternative fee distribution scheme, apparently attempting to take advantage of the fact that defendants have not opposed class counsel's request. Indeed, the objector does not dispute that class counsel is entitled to the requested fees.

*Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 514 (D. Del. 2003). In ordering Pentz's mother-in-law to post a $645,111.60 bond securing the appeal of the denial of her objection in a recent case, Judge Gertner recognized the threat that professional objectors, like Pentz, pose to providing relief to consumers:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.
>
> \* \* \*
>
> Feldman and her attorney, John Pentz (who is also her son-in-law) are professional objectors, not unlike the plaintiff in Sckolnick, whom the First Circuit described as a "litigious pro se who has filed numerous lawsuits in state court." *Sckolnick*, 820 F.2d at 15. In *In Re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 U.S. Dist. LEXIS 25788, No. MDL 1361, 2003 WL 22417252, at *3 (D. Me. Oct. 7, 2003), the court required Hannah Feldman, also represented by Mr. Pentz, to post a bond because that appeal "might be frivolous," and because imposition of sanctions on appeal pursuant

3

> to Rule 38 was "a real probability." The court noted that a bond for "damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in Rule 7 bond." *Id.* Ms. Feldman voluntarily dismissed her appeal several days later.

*Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3-5.

Although less prolific than Mr. Pentz, Darrel Palmer, who represents Objector Billy Daniels has appeared as counsel to objectors in other class actions.[6] And when Class Counsel noticed the deposition of Mr. Palmer's "client," he successfully quashed the subpoena saying that his client is not attending the hearing but that Mr. Palmer intends to argue against the settlement. He also claimed that Mr. Daniels should not be deposed because he had nothing relevant to add, even though he filed an objection to a settlement affecting 2.2 million people.

In light of the foregoing, the Daniels and Pentz objections are lawyer-driven and should, therefore, be viewed skeptically.

**B.    The Court Should Reject The Pentz Objection, As There Is No Factual Or Legal Support For The Objection**

The "substance" of the Pentz objection – if one can call it that – is limited to two paragraphs that seemingly address the state court action in Maryland rather than the consolidated MDL proceeding. Pentz argues that "Class Counsel's lodestar cannot possibly total $1.9 million in this case that lasted a little over a year from filing to settlement, during which little happened other than *pro hac vice* admissions, motions to remand, and a motion to appoint lead counsel." *See* Pentz Obj. at 1. As a threshold matter, this has nothing to do with the fairness, reasonableness or adequacy of the settlement. But it is also a complete mischaracterization of the case. This case, excluding investigation time, lasted over two years from filing to settlement. In the consolidated action alone, there has been over 200 docket entries, to include the filing of a master amended complaint that consolidated twelve cases from across the country,

---

[6] *See, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009), *remanded to* 2010 U.S. Dist. LEXIS 24155 (C.D. Cal. Feb. 3, 2010).

4

motions for appointment of lead counsel, motions to remand, motion for judgment on the pleadings, choice-of-law motions, and numerous scheduling, settlement and discovery conferences. This is in addition to discovery conducted by the parties, the briefing and hearings before the panel on multidistrict litigation, and the motions to dismiss that were fully briefed before consolidation. Pentz's argument that little has occurred in this case to justify Class Counsel's lodestar is not supported by the facts.[7]

Pentz next argues that the settlement is inadequate because it does not provide sufficient monetary relief to class members because the "aggregate amount in controversy…exceeds $250 million." *Id.* at 1. Pentz's argument is not supported by the facts. Since its inception, LifeLock has lost significant amounts of money and, as a relatively young company, is cash poor. Pentz also fails to take into account that LifeLock completely changed its services and advertisements in 2009 to remedy many of the allegations in the complaint, or that the FTC settlement raises substantial issues regarding damages and certifiability. Pentz also confers no value for the broad injunctive relief the private litigants receive. Not only do class members receive the injunctive relief contained in the FTC settlement, relief for which the private litigants were a catalyst, and broader protections relating to the service guarantee, they also receive additional injunctive relief prohibiting LifeLock from requiring arbitration or prohibiting class actions.

The United States Supreme Court has observed that this is a significant benefit because "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *General Tel. Co. of the Southwest v. Falcon*, 457

---

[7] Settle Class Representatives incorporate the Affadavit it Support of Award of Attorneys' Fees as though fully set forth herein. It should also be noted, that Pentz does not "oppose a fee award in the amount of Class Counsel's reasonable document lodestar in this very modest case." Pentz Obj. at 1. Perhaps after Mr. Pentz reviews Class Counsel's fee application, he will withdraw his objection.

5

1 U.S. 147, 155 (1982) (quoting *Califano v. Yamaski*, 442 U.S. 682, 701(1979)). The class
2 device is "an important tool that brings representation to the unrepresented…." *Senate*
3 *Subcomittee Holds Hearing on Class Action Litigation Reform*, 66 U.S.L.W. 2294 (Nov.
4 18, 1997) (statement of Senator Grassley). Class actions often serve as the only means
5 for individual redress when small claims are involved and can serve an important
6 deterrent to wrongdoing and supplement public law enforcement efforts. ALBA CONTE &
7 HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS, §§ 5:48, 5:49 (4th ed. 2002)
8 (collecting cases). Accordingly, it is unreasonable to say that protecting the right to class
9 action litigation is illusory.

10 Similarly, Pentz fails to recognize that the FTC and private settlement are
11 inextricably intertwined, and that Settlement Class Members receive virtually everything
12 they asked for by participating in both settlements. Indeed, the settlement agreed to by
13 the FTC was within the settlement range proposed by Class Counsel. The FTC and
14 private litigants essentially valued the case in a similar manner, but clearly only one party
15 should distribute settlement funds to class members to minimize costs. Because the FTC
16 is well situated to distribute settlement funds (and will ensure higher response rates, most
17 likely) than Class Counsel or LifeLock, it is reasonable that the FTC handle the
18 distribution. The settlement, therefore, is for all intentions and purposes a global
19 resolution. It is not in the best interest of the class to continue to litigate for uncertain
20 marginal benefits when LifeLock already changed its services and advertising that gave
21 rise to the complaint and funded a distribution program through the FTC settlement. For
22 these reasons, the class action settlement is fair, reasonable, and adequate, and Pentz's
23 "pie-in-the-sky" valuation of this case adds nothing to the settlement proceedings.

24 **C.   The Court Should Reject the Billy Daniels Objection**

25 The objection filed by Billy Daniels, and driven by his attorney Darrel Palmer, is
26 also meritless. Mr. Daniels first argues that the benefits provided in the private
27 settlement are almost all available in the FTC settlement. He cites to a provision in the
28 injunction stating that "…LifeLock cannot mislead consumers about how it maintains

6

and protect the privacy, confidentiality, or security of any personal information." Daniels Obj. at 2.  He claims that this provision provides "little value" because the "FTC settlement already requires LifeLock to fully develop and document a new program to secure and protect all consumer information." *Id.*  Mr. Daniels did not take the time to properly compare the two settlement agreements because there is no dispute that the provision regarding privacy, confidentiality, and security is in both settlements.  As such, Mr. Daniels' first argument is meaningless.

Next, Mr. Daniels' cites to actual differences in the settlement: (1) the removal of the arbitration clause from the terms and conditions of LifeLock membership (2) an agreement not to enforce older version of the terms and conditions containing the clause, (3) the removal of the class action prohibition from LifeLock's terms and conditions, and (4) an agreement not to enforce older class action prohibitions.  Daniels Obj. 2-3.  Mr. Daniels, however, does not criticize these benefits.  Instead, he claims that class members must "sacrifice their legal claims to secure the mild benefit provided by this settlement."  But this is not true.  Class members received notice and were given the right to opt-out of the settlement to preserve any and all legal claims they have.  Further, the parties were not required to give notice, but agreed to provide notice to class members so that they did <u>not</u> have to sacrifice their legal claims.

Daniels also fails to recognize the significant benefits the class receives.  First, the removal of the arbitration clause will allow future claimants with bona fide claims to adjudicate their claims in a tribunal of their choosing.  Second, removal of a class action prohibition allows future customers to file class actions – a necessary right given the fact that most disputes will likely involve relatively small claims.  Third, LifeLock completely changed its services and advertising to address the allegations raised in the complaint.  LifeLock no longer places fraud alerts or misrepresents its services.  These changes occurred after the filing of the complaint and are the most significant benefit received by the class.  Finally, the reality is that a companion settlement will result in LifeLock returning back to the Class almost $12 million.  But even if one were to ignore this fact, it

7

is unreasonable to argue that this lawsuit did not benefit Settlement Class Members in a significant and tangible way.

Class members' claims cannot be viewed in isolation and any analysis of the settlement must take into account the risks and uncertainties of future litigation, the claims actually brought, and litigation issues that arose during the dispute. This must then be compared with the nature of the relief afforded and achieved by the lawsuit. It must be recognized that LifeLock no longer places fraud alerts and no longer implies that the service guarantee will cover consumers' out of pocket expenses. These were the two primary concerns of Plaintiffs' complaint, and they are no longer existing issues. When all of the factors are considered, the sole conclusion must be that the settlement is fair, reasonable, and adequate.

Lastly, Daniels argues that the attorney's fees are not justified, but premises his entire argument on the lack of documentation supporting the "fee request." Daniels Obj. at 4. Class Counsel has not yet filed a fee request. Pursuant to this Court's Order, Class Counsel will submit its fee application, and all supporting documentation, on August 2, 2010. The fee application will resolve Daniels's premature, boilerplate objection to the request for attorney's fees. More importantly, the objection to the fee application has nothing to do with the fairness, adequacy and reasonableness of the settlement.

**D.      The Court Should Reject The Kris Klinge And Tracey Cox Klinge Objection**

The Klinge objection is untimely. Objections were due on or before July 9, 2010. The Klinges mailed their objection on July 9, 2010, and it was not filed with the Court until July 12, 2010. Accordingly, the objection does not comply with the Court's order and should be ignored.[8]

But even if the Court considers the objection, it does not provide any basis to reject the settlement. The Klinges claim that the settlement does not provide any

---

[8] The Klinge's claim they are hiring an attorney, but no one has entered an appearance and the time for entering an appearance pursuant to this Court's preliminary approval order has passed.

8

economic benefit. Klinge Obj. at 1. This is incorrect. Injunctive relief is an economic benefit. Further, LifeLock completely changed its services and advertising to address the concerns raised in the complaint–an additional economic benefit. Lastly, Class Members are entitled to participate in the FTC settlement. And while it is true that Class Members have the right to participate in the FTC settlement absent the private settlement, it ignores the global nature of the two settlements and that fact that Class Members received additional economic benefits. It also ignores the simple fact that LifeLock addressed the concerns in the complaint by changing its services and advertising, exactly what was prayed for in the complaint.

Also, Class Members were not required to give up anything. They were given the right to opt out of the settlement to protect any claims they have against LifeLock. Giving notice to 2.2 million people is an extraordinarily expensive process. Putting aside the monetary costs, Class Counsel communicated with over 3,200 class members by e-mail, letter, or phone. The sheer number of calls, letters, and e-mails to Class Counsel required 12 people to properly address, to include a Spanish interpreter. The parties were not required to give notice, but did so to ensure that Class Members had the right to opt-out and protect their rights.

The outcome of this case is a triumph for consumers.[9] The Klinges' untimely objection adds nothing to the proceedings and should be ignored.[10]

---

[9] The Klinges ask the court to "reduce the requested award of attorney [sic] fees substantially." Klinge Obj. at 3. This is significant since there has not been a request for attorney's fees. In essence, the Klinges argue that fees are excessive even though they have no idea what will be sought. The Klinges have not seen a fee application or any documentation supporting a fee application. An objection to a non-existent fee request illustrates the unreasonableness of their position.

[10] Jason G. Cabot filed a similar, albeit timely, objection stating that past customers who do not exclude themselves are bound to the settlement and therefore giving up a significant right for nothing. Once again, all class members were given the right to opt-out of the settlement and the parties voluntarily gave notice to ensure that class members had that right. Therefore, no one was forced to give up a right. Further, Mr. Cabot ignores the fact that the two main issues in the litigation – relating to fraud alerts fraud

E.   **The Remaining Objections**

1. <u>The Following Class Members Filed Objection Asking to be Excluded From the Settlement</u>.

Four objectors filed written objections stating that they do not support the settlement because they believe LifeLock did not misrepresent its product or act illegally. Each asked to be excluded from the Settlement Class. As such, the following Class Members should be excluded from the settlement:

- Kyle L. Miller [DKT 175]
- Allison M. Miller [DKT 175]
- Phillip Moxley [DKT 169]
- Paula Logsdon [DKT 161]

Abel and Myrtle Plaisance [DKT 188] and Mary Susan Bruaw [170], asked to be excluded from the settlement. Class Counsel has added them to the list of members excluded from the Settlement Class.

Pamela Mazzeo [DKT 166] criticized the entire justice system in her objection and then offered several cases that she believes should be filed instead of this one. Ms. Mazzeo has asked to be excluded from the suit, and Settlement Class Representatives agree.

2. <u>The Following Objectors Did Not Explicitly Ask to Be Excluded From the Class, but Class Counsel Believes that they should be Excluded Given the Nature of their Objections.</u>

Patricia A. Jackson [DKT 176] wrote, "This letter is to inform all parties of concern that I am writing because I opt to "Object" accordingly."   Given the tenor of the

---

and LifeLock's service guarantee—are resolved, and there is financial redress for consumers as part of a global settlement. As such, additional monetary damages in this case would likely be offset by the eleven million in damages paid to the same class members in the FTC settlement. This clearly raises significant issues regarding damages and certification, and supports settlement. For these reasons, Mr. Cabot's argument does not support denying final approval. .

10

letter, Class Counsel believes that Patricia Jackson should be permitted to opt-out of the settlement.

Barry F. Hollenbeck [DKT 165] asked for "full refund of the first years [sic] payment" and for LifeLock to "remove all records of me from their [sic] possession." He also claims that LifeLock improperly billed him for a year, although he admits it was removed from his credit card. Mr. Hollenbeck did not ask to be excluded, but Class Counsel believes that he should be excluded to pursue any remaining damages he may be entitled to.

Three objectors submitted a form objection stating that they object because "Lawyer and FTC are getting $12,000,000" and LifeLock members are getting nothing. This is simply not a true statement. The objections also state that they do not believe in suing. As such, Class Counsel believes that the objectors should be excluded from the lawsuit. The objectors are Nathan A. Brennan (DKT 164), Jeni L. Intallura [DKT 163], and Robert C. Hamblin [DKT 162].

John K. Dupps [DKT 168] filed an objection stating, "I object to the settlement on the basis that I was misled by the advertising of Lifelock" He goes on to say, "The advertising led me to believe LifeLock would prevent ID theft." Cynthia Dupps [DKT 167] filed the exact same Objection. Despite the fact that they did not explicitly ask to be excluded, Class counsel believes that the Dupps should be excluded to preserve any and all claims they might have against LifeLock.

William Teunis [DKT 171], believes that he is not being justly compensated under the terms of the settlement and asked for $100,000 for "representing" himself. Class counsel believes that Mr. Teunis should be excluded from the settlement class to pursue any claim he might have against LifeLock.

Rolando S. Damas [DKT 179] submitted an objection complaining about LifeLock's services and advertisements. Because Mr. Damas may wish to pursue a claim against LifeLock, Class Counsel believes he should be permitted to opt-out of the settlement to preserve any such claim.

Lynn W. Haddock [DKT 180] and Robert D. Haddock [DKT 180], filed objections arguing that they should not have to spend time to opt-out of the settlement, and that they object to automatically being included in the settlement. Mr. and Mrs. Haddock did not explicitly ask to opt-out of the settlement, but given their strong objections to being automatically included in the settlement, Class Counsel believes they should be permitted to opt-out.

3. <u>Miscellaneous Objections</u>.

One Class Member, Ruby McCool, submitted a handwritten letter containing information about her LifeLock membership. The letter does not appear to be an objection or an attempt to opt-out of the settlement. As such, Class Counsel believes that Ruby McCool should remain a settlement Class Member.

Marcelle Scott Rogers [DKT 177] simply provided her address. It does not appear that Marcelle Rogers intends to opt-out.

One member, Finabar Patrick McGarry [173], objected to the settlement because it limits maximum attorneys' fees to $1.9 million. Mr. McGarry believes there should be no cap, and that the Court should be allowed to authorize a higher payment. Settlement Class Representatives believe that the contractual fee agreement is reasonable and appropriate for the successful resolution of this case.

## III.  CONCLUSION

The Settlement is the result of hard-fought litigation and negotiation. The Settlement provides an excellent result, especially in the context where, because of this lawsuit alone or this lawsuit in conjunction with competitor or FTC actions, the primary alleged wrongs are no longer occurring. Virtually everything prayed for in the complaint has been achieved. The Objectors' positions are not supported by fact or law and should be rejected. Plaintiffs respectfully request that the Court grant final approval to the Settlement Agreement.

RESPECTFULLY SUBMITTED this 30th day of July, 2010.

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By   s/ Leonard W. Aragon
    Robert B. Carey
    Leonard W. Aragon
    11 West Jefferson Street, Suite 1000
    Phoenix, Arizona 85003

    Steve W. Berman
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1918 Eighth Avenue, Suite 3300
    Seattle, Washington 98101

    J. Grant Woods
    GRANT WOODS, P.C.
    1726 North Seventh Street
    Phoenix, Arizona 85006
    Telephone: (602) 258-2599
    Facsimile: (602) 258-5070
    E-mail: gw@grantwoodspc.net

Interim Lead Counsel for Plaintiffs

13

**CERTIFICATION OF SERVICE**

I hereby certify that on July 30, 2010, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Peter A Antonucci, antonuccip@gtlaw.com, kormanikm@gtlaw.com

Ruth Ann Bahe-Jachna, baher@gtlaw.com, buczekd@gtlaw.com

TerriAnne Benedetto, tbenedetto@seegerweiss.com

Steve W Berman, steve@hbsslaw.com, heatherw@hbsslaw.com

Nina Boyajian, boyajian@gtlaw.com

Edward Henry Britt, EBritt@BrittLawGroup.com, SPintel@BrittLawGroup.com

Kristine Kunkel Campbell, campbellk@gtlaw.com, fischerc@gtlaw.com, mackeym@gtlaw.com

Robert B Carey, rcarey@hbsslaw.com, amyn@hbsslaw.com, cindyj@hbsslaw.com

Leif Garrison, lgarrison@earthlaw.com, gbeck@earthlaw.com

Christine Marie Fox, cfox@kaplanfox.com

Jordan D Grotzinger, grotzingerj@gtlaw.com, SolorzanoM@gtlaw.com

Patrick Howard, phoward@smbb.com, jrose@smbb.com, cdfonda@smbb.com

Roger B Kaplan, kaplanr@gtlaw.com

Laurence D King, lking@kaplanfox.com, agutierrez@kaplanfox.com

Justin M Klein, justin@marksklein.com, joanne@marksklein.com, karin@marksklein.com

George K Lang, george@freedweiss.com, ecf@freedweiss.com, sherrie@freedweiss.com

William F Murphy, wfm@wirepaladin.com, slm@dillinghammurphy.com

Charlene Lee Oh, OhC@gtlaw.com, beattyc@gtlaw.com

Pamela M Overton, overtonp@gtlaw.com, mowent@gtlaw.com

Darrell Palmer, darell.palmer@palmerlegalteam.com, maria.carapia@palmerlegalteam.com

David S Paris, david@paslawfirm.com

Simon Bahne Paris, sparis@smbb.com, jrose@smbb.com, cdfonda@smbb.com

Stuart McKinley Paynter, stuart@smplegal.com

Luanne Sacks luanne.sacks@dlapiper.com, kathleen.fischer@dlapiper.com

Jonathan Shub jshub@seegerweiss.com

Ryan Christopher Skiver, rskiver@brittlawgroup.com

Joel Grant Woods, gw@grantwoodspc.net, sharonb@grantwoodspc.net

Thomas A Zimmerman, Jr., tom@attorneyzim.com

I further certify that on July 30, 2010, I served the attached document via U.S. Mail on the following, who are not registered participants of the CM/ECF System:

    Kris and Tracey Cox Klinge
    3132 State Street, Apt. E
    Dallas, Texas 75204

    David Medine
    WILMERHALE
    1875 Pennsylvania Avenue, NW
    Washington, D.C. 20006

s/ Cindy Johnson