IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

IN RE LIFELOCK, INC. MARKETING AND SALES PRACTICES LITIGATION ) ) ) ) ) ) ) ) ) )

MDL Docket No. 08-1977-MHM

**ORDER OF DISMISSAL WITH PREJUDICE**

Currently pending before the Court is Defendants LifeLock, Inc. and Richard Todd Davis ("LifeLock") and Plaintiffs Melvyn Blake, Alva Blake, Franco Vega, Byrl Lane, and Jason Sbalcio ("Class Representatives") Joint Motion for Final Approval of the Class Action Settlement and Entry of Final Judgment and Order of Dismissal. (Doc. 199). Also pending before the Court is Plaintiffs' Petition for an Award of Attorneys's Fees, Expenses and Incentive Fees. (Doc. 209). After reviewing the record and holding oral argument on August 10, 2010, the Court enters the following Order.

This matter came before the Court for hearing pursuant to its April 16, 2010 Preliminary Approval Order on the application of the Parties pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for final approval of the class settlement recited in the Settlement Agreement. Due and adequate notice having been given of the settlement as required in the Preliminary Approval Order, and the Court having considered all papers filed and proceedings held and otherwise being fully informed and good cause appearing:

1  **IT IS HEREBY ORDERED** granting the Parties' Joint Motion for Final Approval of the
2  Class Action Settlement and Entry of Final Judgment and Order of Dismissal. (Doc. 199).
3  1.     This Final Judgment And Order Of Dismissal With Prejudice incorporates by
4  reference the definitions set forth in the Settlement Agreement.
5  2.     This Court has jurisdiction over the subject matter of the MDL Proceedings, the
6  Underlying Actions and the Related State Court Actions (collectively, the "Litigation") and
7  over all Parties to the Litigation, including all members of the Settlement Class.
8  3.     Pursuant to Rule 23(e), the Court certifies, for purposes of effectuating the settlement
9  only, a class of all Persons who, at any time up to and including April 17, 2010, were
10 subscribers of LifeLock's identity theft protection services.  Excluded from the Class are
11 employees, officers and directors of LifeLock; any judge or employee of any court assigned
12 to work on the MDL Proceedings, the Related State Court Actions and the Underlying
13 Actions; and Plaintiffs' and LifeLock's attorneys and staff.  Also excluded from the
14 Settlement Class are those Persons who timely and validly requested exclusion from the
15 settlement.  Attached as an Exhibit to this Order is the list of individuals who have submitted
16 both compliant and non-compliant requests for exclusions.
17 4.     A class may be certified solely for purposes of settlement before a litigated
18 determination of the class certification issue. Molski v. Gleich, 318 F.3d 937, 946 (9th Cir.
19 2003).  To qualify for certification, an action must satisfy Rule 23(a) as well as one of the
20 three subdivisions of Rule 23(b).  Fed. R. Civ. P. 23(a), (b); see also Eisen v. Carlisle &
21 Jacquelin, 417 U.S. 156, 162-63 (1974); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620
22 (1997) (however, "a district court need not inquire whether the case, if tried, would present
23 intractable management problems, for the proposal is that there is no trial.").
24 5.     Rule 23(a) permits a case to be maintained as a class action if "(1) the class is so
25 numerous that joinder of all members is impracticable; (2) there are questions of law or fact
26 common to the class; (3) the claims or defenses of the representative parties are typical of the
27 claims or defenses of the class; and (4) the representative parties will fairly and adequately
28

- 2 -

1 protect the interests of the class." Fed. R. Civ. P. 23(a).  The Court finds that these
2 prerequisites for a class action have been satisfied in that:
3 a.     **Numerosity**.  Courts acknowledge that numerosity will normally exist when the class
4 consists of forty or more members. See Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994,
5 997 (9th Cir. 2007).  Based on LifeLock's records, direct notice was sent to the more than
6 two million subscribers that fall within the scope of the Settlement Class.  Accordingly, the
7 numerosity requirement is satisfied.
8 b.     **Commonality**.  Unlike the Rule 23(b)(3) predominance requirement, the Rule 23(a)
9 commonality threshold is not high.  Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1177 (9th Cir.
10 2007) (en banc).  "One significant issue common to the class may be sufficient to warrant
11 certification."  Id. (citing Savino v. Computer Credit, Inc., 173 F.R.D. 346, 352 (E.D.N.Y.
12 1997), aff'd, 164 F.3d 81 (2d Cir. 1998)).  Here, numerous factual and legal questions are
13 common to the Settlement Class, including (i) whether LifeLock could lawfully place fraud
14 alerts on behalf of subscribers; (ii) whether LifeLock's statement that it could legally place
15 fraud alerts on behalf of its subscribers was false, misleading, or deceptive; (iii) whether
16 LifeLock's statements regarding its Service Guarantee were false, misleading, or deceptive;
17 (iv) whether LifeLock breached its subscription agreements; and (v) whether Arizona law
18 governs all claims against LifeLock.  Accordingly, the commonality requirement is satisfied.
19 c.     **Typicality**.  The typicality requirement "[is] satisfied when each class member's claim
20 arises from the same course of events, and each class member makes similar legal arguments
21 to prove the defendant's liability."  Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2010)
22 (internal quotations omitted); see also Vasquez, 266 F.R.D. at 487 ("Under the rule's
23 'permissive standards,' representative claims are typical if they are 'reasonably co-extensive
24 with those of absent class members….") (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011,
25 1020 (9th Cir. 1998)).  Here, typicality exists because the Class Representatives and Class
26 Members were all LifeLock subscribers, received the same services, were subject to
27 substantively analogous terms and conditions, and therefore have similar claims and
28 defenses.

1    d.    **Adequacy**. To satisfy the adequacy requirement, two components must be met. The class representative must have no interests antagonistic to the class and be able to prosecute the action vigorously, and class counsel must possess the competence to undertake the litigation. In re Mego Fin'l Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). Here, the Class Representatives have no interest that is adverse or antagonistic to those of the Settlement Class. Class Counsel has also demonstrated that they are experienced in prosecuting class actions and other complex matters. Together, the Class Representatives and Class Counsel have vigorously prosecuted the consolidated actions in the MDL Proceedings.

6. Once an action meets the requirements for Rule 23(a), it may be maintained if it meets one of three additional requirements of Rule 23(b). Here, the Parties seek certification for settlement purposes only pursuant to Rule 23(b)(2). Such certification is appropriate where the defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2); Rodriguez, 591 F.3d at 1125. This inquiry is "encompassed by the commonality requirement of Rule 23(a)." See Diaz v. Hillsborough Cnty. Hosp. Auth., 165 F.R.D. 689, 695 (M.D. Fla. 1996); accord McManus v. Fleetwood Enter., Inc., 320 F.3d 545, 552 (5th Cir. 2003) ("Rule 23(b)(2)'s requirement that a defendant have acted consistently towards the class is plainly more permissive than 23(b)(3)'s requirement that questions to the class predominate over individual issues."). For certification pursuant to Rule 23(b)(2) to be warranted, injunctive relief must also be the predominant form of relief sought by the class. Dukes, 603 F.3d at 617; Fed. R. Civ. P. 23(b)(2) advisory committee's note (1966).

7. As this Court found in its Preliminary Approval Order, the Parties have shown that certification is proper pursuant to Rule 23(b)(2) because "the relief sought necessarily affects all class members." The claims in the Litigation are based on the general averment that LifeLock, acting on grounds generally applicable to Class Members, made misrepresentations in its marketing, advertising and administration of its identity-theft protection services and its Service Guarantee. The injunctive relief to be afforded under the

terms of the Settlement Agreement would correlate directly to this averment and thus satisfies Rule 23(b)(2).  Certification is also warranted based on the uniform nature of LifeLock's other alleged conduct and the resulting shared interests of the Class Members in securing further declaratory and injunctive relief via the Settlement Agreement.  Finally, the Court notes that no timely objection was filed that even attempted to show that the requirements of Rule 23(a) and Rule 23(b)(2) had not been satisfied by the Parties in their joint request for conditional certification of the Settlement Class which was granted by the Court in its Preliminary Approval Order.

8. Furthermore, certification pursuant to Rule 23(b)(2) is appropriate because the Class Members' claims for injunctive relief predominate over their damage requests.  The Ninth Circuit Court of Appeals recently adopted a new test for resolving this question: "To determine whether monetary relief predominates, a district court should consider, on a case-by-case basis, the objective 'effect of the relief sought' on the litigation." Dukes, 603 F.3d at 617.  The following factors are relevant:  (i) "whether the monetary relief sought determines the key procedures that will be used," (ii) "whether [the monetary relief] introduces new and significant legal and factual issues," (iii) "whether [the monetary relief] requires individualized hearings, and" (iv) "whether [the monetary relief's] size and nature - as measured by recovery per class member - raise particular due process and manageability concerns." Id.  The Litigation initially included claims for both monetary and injunctive remedies, and absent settlement, the question of which of those remedies would predominate in the continued litigation would have been a disputed issue.  The landscape of the Litigation changed, however, as a consequence of the FTC settlement.  The payment to the FTC on behalf of consumers raised legitimate questions as to whether the payment would affect future monetary relief in the civil action or certification pursuant to Rule 23(b)(3). Under the factors enunciated by the Ninth Circuit Court of Appeals, such monetary relief would not predominate over the substantial injunctive relief provided in the Settlement Agreement.

9. Except as to any individual claim of those Persons **(identified in the Exhibit attached hereto),** who have validly and timely requested exclusion from the Settlement

- 5 -

1  Class, the Litigation and all claims contained therein, including all of the Settled Claims, are
2  dismissed with prejudice as to the Class Representatives and the other members of the
3  Settlement Class as against LifeLock, the LifeLock Affiliated Entities and Richard Todd
4  Davis (collectively, the "Released Parties"). The Parties are to bear their own costs, except
5  as awarded by this Court and under the relevant terms of the Settlement Agreement.

6  10.  Upon the Effective Date, the Class Representatives and each of the Class Members
7  shall be deemed to have, and by operation of this Final Judgment And Order Of Dismissal
8  With Prejudice shall have, fully, finally, and forever released, relinquished, and discharged
9  all Settled Claims against the Released Parties. **All Class Members are hereby forever**
10  **barred and enjoined from prosecuting the Settled Claims against the Released Parties**.

11  11.  Rule 23(e) provides that a class action shall not be dismissed or compromised without
12  court approval following "a hearing and on finding that the [the compromise] is fair,
13  reasonable, and adequate." Fed. R. Civ. P. 23(e). The Ninth Circuit Court of Appeals has
14  articulated several factors relevant to the evaluation of the fairness of a class action
15  settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and
16  likely duration of further litigation; (3) the risk of maintaining class action status throughout
17  the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed,
18  and the stage of the proceedings; (6) the experience and views of counsel; and (7) the
19  reaction of the class to the proposed settlement. Molski, 318 F.3d at 953; Hanlon, 150 F.3d
20  at 1026. As this Court concluded in its Preliminary Approval Order, these factors favor a
21  finding of fairness, reasonableness, and adequacy, and demonstrate that the settlement recited
22  in the Settlement Agreement falls within the range of settlements qualified for judicial
23  approval and is in the best interests of the Settlement Class:

24  **The strength of plaintiffs' case, the risk of continued litigation, and the risk of**
25  **maintaining class action status through the trial**. Every class action involves a degree of
26  uncertainty on the merits, and therefore an important consideration in assessing a settlement's
27  reasonableness is the strength of the plaintiff's case on the merits in comparison to the
28  amount offered in the settlement. See Van Bronkhorst v. Safeco Corp., 529 F.2d 943, 950

(9th Cir. 1976); <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 488 (E.D. Cal. 2010). Courts also make a related assessment in considering "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." <u>Vasquez</u>, 266 F.R.D. at 489. Here, the Parties disagree about the merits of the Litigation and there is substantial uncertainty regarding the outcome of both the certification and liability phases. Prior to reaching this settlement, LifeLock filed a motion for judgment on the pleadings. Although the Parties disagree about the merits of that motion, they agree that a ruling - regardless of which Party it favors - would have a significant impact on the Litigation. In addition, LifeLock also elicited deposition testimony from the Class Representatives and some plaintiffs in the Related State Court Action that it believes warrants summary judgment and denial of a request for certification of a class under Rule 23(b)(3). The Class Representatives disagree, but acknowledge the relevant risks regarding their ability to certify a Rule 23(b)(3) class and succeed on the merits. The Class Representatives also acknowledge that the related FTC settlement, including the $11 million fund created in the course of that settlement to be used to provide consumer redress to LifeLock subscribers who also comprise the Settlement Class here, could decrease the likelihood of success in obtaining certification pursuant to Rule 23(b)(3) and/or demonstrating entitlement to monetary damages in this Litigation. By comparison, the unique settlement reached by the Parties provides certainty with regard to the relief the Class Members will obtain. Combined with the FTC settlement redress remedy, Class Members secure relief, both monetary and injunctive that they sought when they initiated the Litigation. More importantly, LifeLock remedied virtually all of the concerns raised by the Master Amended Complaint. For example, LifeLock no longer places fraud alerts and has revised the language of its disclosures regarding the scope of its million dollar Service Guarantee to the Settlement Class Representatives' satisfaction.

12. These considerations therefore strongly favor granting final settlement approval.

13. **The complexity, expense, and duration of the litigation**. In addition to the risks inherent in litigation, the Parties also face the certainty that resolution of the MDL

1  Proceedings by this Court and of the Related State Court Actions by multiple state courts -
2  and potentially through appeal - will be expensive, complex, and time consuming.  For
3  example, a motion for judgment on the pleadings and a motion for a choice-of-law
4  determination are currently pending before the Court, LifeLock has stated that it is prepared
5  to move forward with a preemptive challenge to class certification, and the parties are also
6  prepared to seek additional discovery.  This factor also clearly supports final settlement
7  approval.  See, e.g., Nat'l Rural Telecomms. Coop v. DIRECTV, Inc., 221 F.R.D. 523, 526
8  (C.D. Cal. 2004) ("unless the settlement is clearly inadequate, its acceptance and approval
9  are preferable to lengthy and expensive litigation with uncertain results.").

10  14.  **The consideration offered in the settlement**.  Many courts have approved
11  settlements where, as here, the consideration offered consists of injunctive relief.  See, e.g.,
12  Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 688 (N.D. Ga. 2001).  Here, the Settlement
13  Agreement provides for comprehensive injunctive relief, beyond that provided by the FTC
14  settlement, which benefits past, present, and future LifeLock subscribers.  Further, LifeLock
15  has discontinued placing fraud alerts and made changes to its advertisements and
16  representations regarding its Service Guarantee.  The relief afforded is what was explicitly
17  sought in the Litigation, as it responds directly to the challenges raised in the complaints in
18  these cases.  Furthermore, although this settlement does not afford monetary payments to
19  Class Members, it preserves their right to recover funds as part of the distribution of the $11
20  million consumer redress fund created under the FTC settlement.  The relief provided by the
21  Parties' settlement is substantial and supports final settlement approval.

22  15.  **The stage of the proceedings, and experience and views of counsel**.  The Parties
23  have litigated these class actions for over two full years, have conducted extensive discovery,
24  and initiated and adjudicated dispositive motions.  These actions have therefore progressed
25  sufficiently to enable the Parties and counsel to assess the risks of proceeding as opposed to
26  settlement.  See Vasquez, 266 F.R.D. at 489 ("the litigation had proceeded to a point in
27  which both plaintiffs and defendants 'ha[d] a clear view of the strengths and weaknesses of
28  their cases.'").  In addition, the Parties' counsel - who have demonstrated their substantial

- 8 -

1  experience in litigating class actions and other complex litigation - support this settlement
2  and have demonstrated that the settlement is the product of extensive arm's-length
3  negotiations. These considerations also weigh in favor of final approval. See Vasquez, 266
4  F.R.D. at 489 (courts should give great weight to counsel's recommendations).

5  16.    **The reaction of the class to the proposed settlement**. In assessing whether to grant
6  approval of a settlement, courts consider the reactions of the members of the class,
7  particularly the class representatives. Vasquez, 266 F.R.D. at 490. The Class
8  Representatives, who have a substantial understanding and experience with this action and
9  the settlement, have voiced their support for the settlement. In addition, the relatively few
10 objections and requests for exclusion received following performance of the notice program
11 mandated in the Preliminary Approval Order also supports settlement approval. Specifically,
12 the Parties provided direct notice of the settlement to more than 2.3 million LifeLock
13 subscribers by either email or direct mail or both. The terms of the Settlement Agreement
14 were also publicized via a dedicated website, located on the Internet at
15 www.lifelocksettlement.com. Pursuant to the Class Action Fairness Act of 2005, LifeLock
16 also provided notice to 57 federal and state government officials. Not one of the
17 governmental entities that LifeLock notified objected to the proposed settlement. This
18 weighs heavily in favor of settlement approval. See, e.g., IUE-CWO v. Gen. Motors Corp.,
19 238 F.R.D. 583, 590 (E.D. Mich. 2006). In addition, there were very few timely written
20 objections and requests for exclusion from the settlement. This incredibly sparse group
21 (collectively, less than one one-hundredth of a percent of Class Members opted out or
22 objected, and some people who chose opt out did so to protect their claims against LifeLock
23 not because they were dissatisfied with LifeLock; less than one one-thousandth of a percent
24 of the Settlement Class objected on any basis) indicates that the vast majority of the
25 Settlement Class found the settlement to be fair and reasonable. Furthermore, the Parties
26 demonstrated in their Response to Objections that none of the asserted bases for objection
27 is valid.

28

17. Pursuant to the Preliminary Approval Order, the Parties provided individual notice to all Class Members via electronic or first class mail, as well as publication notice via a dedicated Internet settlement website and a hyperlink residing on LifeLock's website home page. Pursuant to their agreement, the Parties also afforded Class Members with the ability to exclude themselves. Neither notice nor the ability to opt out were required as Rule 23(b)(2) classes may be certified on a mandatory basis, i.e., without the right to opt out or the receipt of notice. Here, the Settlement Agreement provides for notice and opt-out rights and thus ensures ample protection of Class Members' due process rights. Under the circumstances, the Parties' notice plan constituted the best notice practicable under the circumstances, adequately informed the Class Members regarding the terms of the proposed settlement, including their rights to exclude themselves or opt-out and by when, and fully satisfied the requirements of Rule 23, the requirements of due process, and any other applicable law.

18. As provided in the Settlement Agreement, in connection with the advertising, distributing, promoting, offering for sale, or sale of any product, service, or program designed for the purpose of preventing, mitigating, or recovering from any form of identity theft as defined in 18 U.S.C. § 1028, LifeLock shall not misrepresent:

    (i) that such product, service, or program provides complete protection against all forms of identity theft by making customers' personal information useless to identity thieves;

    (ii) that such product, service, or program prevents unauthorized changes to customers' address information;

    (iii) that such product, service, or program constantly monitors activity on each of its customers' consumer reports;

    (iv) that such product, service, or program ensures that a customer will always receive a phone call from a potential creditor before a new credit account is opened in the customer's name;

     (v)  the means, methods, procedures, effects, effectiveness, coverage, or scope of such product, service, or program;

     (vi)  the risk of identity theft to consumers;

     (vii)  whether a particular consumer has become or is likely to become a victim of identity theft; and/or

     (viii)  the opinions, beliefs, findings, or experiences of an individual or group of consumers related in any way to any such product, service, or program.

Such products, services or programs include, but are not limited to, the placement of fraud alerts on behalf of consumers, searching the Internet for consumers' personal data, monitoring commercial transaction for consumers' personal data, identity theft protection for minors, and guarantees of any such products, services or programs.

19. LifeLock also shall not misrepresent in any manner, expressly or by implication, the manner or extent to which LifeLock maintains and protects the privacy, confidentiality, or security of any personal information collected from or about consumers.

20. In addition, LifeLock shall not

     (i)  include in future versions of the Terms and Conditions of LifeLock membership any provision requiring members to submit any disputes with LifeLock to arbitration;

     (ii)  seek to enforce any arbitration clause set forth in any current or prior version of the Terms and Conditions of LifeLock membership described on LifeLock's website;

     (iii)  include in future versions of the Terms and Conditions of LifeLock membership any provision prohibiting members from participating in class action litigation against LifeLock; or

     (iv) seek to enforce any prohibition against class action litigation set forth in any current or prior version of the Terms and Conditions of LifeLock membership described on LifeLock's website.

21. Any order entered regarding the attorneys' fee and expense application submitted by Class Counsel consistent with the Settlement Agreement, shall in no way disturb or affect this Final Judgment And Order Of Dismissal With Prejudice and shall be considered separate from this Final Judgment And Order Of Dismissal With Prejudice.

22. Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Settled Claim, or of any wrongdoing or liability of LifeLock; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. The Released Parties may file this Final Judgment And Order Of Dismissal With Prejudice in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

23. Without affecting the finality of this Final Judgment and Order of Dismissal with Prejudice in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement; (b) hearing and determining applications for attorney fees and expenses in the Litigation; and (c) all parties hereto for the purpose of construing, enforcing, and administering the Settlement Agreement.

24. In the event that the settlement does not become effective in accordance with the terms of the Settlement Agreement or the Effective Date does not occur, then this Final Judgment And Order Of Dismissal With Prejudice shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

**IT IS FURTHER ORDERED** granting Plaintiffs' Petition for an Award of Attorneys' Fees, Expenses and Incentive Fees. (Doc. 209).

1. Plaintiffs have moved the Court to award $1.9 million in attorneys' fees, costs, and incentive fees for the named Plaintiffs. LifeLock does not oppose this request.

2. In class action litigation, awards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct. Dolgow v. Anderson, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Plaintiffs have asserted three theories under which they might be entitled to an award of fees: (1) by entering into a settlement agreement, the Parties have agreed to shift the cost of legal fees from Plaintiffs to Defendants, and that such an agreement is binding under both Arizona state law and the law of the Ninth Circuit, See Friedman v. Microsoft Corp., 141 P.2d 824 (Ariz. Ct. App. 2006); Wing v. Asarco, Inc., 114 F.3d 986, 989 (9th Cir. 1997); (2) the Court is authorized to make a fee award under A.R.S. § 12-341.01(A), which states that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorneys' fees"; and (3) the Court may award fees under the substantial benefit doctrine, which states that when a class action results in the conferral of substantial benefits on an ascertainable class of plaintiffs, the defendant may be required to pay part of those benefits to the class attorney. Vincent v. Hughes Air West, 557 F.2d 759, 768 n.7 (9th Cir. 1977) ("[T]he substantial benefit doctrine was devised to permit fee shifting in cases not covered by the common fund doctrine because of the absence of a pecuniary benefit but yet involving interests of broad public importance, interests that Congress sought to vindicate at least in part through private litigation."). The Court finds that all three of Plaintiffs legal theories support a reasonable fee award.

3. Irrespective of the specific legal theory, courts generally look to the lodestar as a starting point to determine whether a fee award is reasonable. Under the lodestar approach, courts multiply the hours that the attorneys expended by the attorneys' normal hourly rate to create a lodestar figure. See Blum v. Stenson, 465 U.S. 886 (1984) (noting the first step in determining reasonable attorneys' fee is to "multiply the number of hours reasonably

1 expended on the litigation times a reasonable hourly rate"). To ensure that the lodestar is
2 reasonable given the risks and complexity of the case, in most types of cases "the resulting
3 figure may be adjusted upward or downward to account for several factors including the
4 quality of the representation, the benefit obtained for the class, the complexity and novelty
5 of the issues presented, and the risk of nonpayment." Shaffer v. Cont'l Cas. Co., 2010 U.S.
6 App. LEXIS 726, *11 (9th Cir. Jan. 12, 2010); Vizcaino v. Microsoft Corp., 290 F.3d 1043,
7 1051 (9th Cir. 2002) (multiplier appropriate based on "the substantial risk class counsel
8 faced, compounded by the litigation's duration and complexity"). In computing the lodestar,
9 the hourly billing rate to be applied is the "market rate," i.e., the hourly rate normally charged
10 in the community where counsel practices. See, e.g., Blum v. Stenson, 465 U.S. 886 (1984);
11 Hensley v. Eckerhart, 461 U.S. 424, 447 (1983) ("market standards should prevail"). In the
12 instant case, the Court finds that Counsel's rates are the competitive hourly rates in their
13 respective legal communities for litigating cases of this sort—complex consumer class action.
14 See Ressler v. Jacobson, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("The Supreme Court … held
15 that 'reasonable fees … are to be calculated according to the prevailing market rates in the
16 relevant community,' i.e., where counsel maintains their office…'").

17 4.     In prosecuting this action, counsel for Plaintiffs have expended over 4000 work hours
18 for an aggregate lodestar of $1,535,137.40. Plaintiffs then adjusted the lodestar figure
19 upwards using a multiplier of 1.17, which reflects the final figure of $1.9 million. The Court
20 has reviewed Plaintiffs' detailed fee application, along with any objections, and finds the
21 requested fee award to be reasonable and non-extravagant, particularly in light of the
22 complexity of this MDL action, the risks incurred by Plaintiffs in bringing such a case, and
23 the legal skill demonstrated by all Counsel for Plaintiffs throughout the course of litigating
24 this matter.

25 5.     The Court has considered the recent decision by the Ninth Circuit in In re Mercury
26 Interactive Corp. Securities Litigation, --- F.3d ---, 2010 WL 3239460 (9th Cir. Aug. 18,
27 2010), and has determined that the In re Mercury Interactive decision should have no impact
28 on the pending Motion for Attorneys' Fees.  First, the settlement pending before this Court

1. does not involve a common fund. Indeed, the proposed fee award has no effect on the scope of the injunctive benefits afforded to the class nor the monetary redress available to class members under the related settlement between LifeLock and the Federal Trade Commission. Moreover, unlike the class members and attorneys in In re Mercury Interactive, there is no "adversarial" relationship at the fee setting stage requiring the Court to assume the "role of fiduciary for the class plaintiffs" because the fee award is not coming from a common fund and will not affect class members' rights. Id. at *5. Second, and more importantly, as this Court has previously acknowledged, under Rule 23(c)(2)(a), the Parties were not required to provide notice of the settlement to class members, but did so voluntarily. By voluntarily affording class members the opportunity to object to the settlement or to exclude themselves from it, the Parties already exceeded the notice mandates of Rule 23, and no further notice is required under the Rule when awarding attorneys' fees. By contrast, the In re Mercury Interactive settlement was a Rule 23(b)(3) damages class, a settlement of which can only be approved after notice to the class and an opportunity to object or opt out. Id. at **1-2. For these reasons, the Court finds In re Mercury Interactive to be inapposite.

6. As such, the Court deems it wholly appropriate to grant the requested fees, costs and incentive awards in full.

**IT IS FURTHER ORDERED** denying as moot all other pending Motions. (Docs. 115, 130, 135.)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to close the case and enter judgment accordingly.

DATED this 25th day of August, 2010.

_____
Mary H. Murguia
United States District Judge